Lori SILCHIA, Barbara Zimmerman, Joe Piccinetti, and Tim Montoya, Plaintiffs,

v.

MCI TELECOMMUNICATIONS CORPORATION, a Delaware corporation, Defendant.

Civil Action No. 94–B–2781.

United States District Court, D. Colorado.

Oct. 22, 1996.

Michael O'Malley, Ronald A. Podboy, Denver, CO, for Plaintiffs.

Edwin P. Aro, K. Preston Oade, Jr., Holme Roberts & Owen LLP, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this breach of contract/promissory estoppel and defamation action, defendant, MCI Telecommunications Corporation, (MCI) moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the claims of Lori Silchia (Silchia), Barbara Zimmerman, (Zimmerman), Joe Piccinetti (Piccinetti), and Tim Montoya (Montoya) (collectively, plaintiffs). After consideration of the motion, briefs, and oral argument, I will dismiss claim one based on retaliation for utilizing MCI's "open door" policy for lack of subject matter jurisdiction and grant the motion for summary judgment on plaintiffs' breach of contract/promissory estoppel claim for violation of MCI's alleged progressive discipline policy. I will also hold in abeyance defendant's motion for summary judgment on plaintiffs' defamation claim.

### I.

Unless otherwise indicated, the following facts are not in genuine dispute. Plaintiffs, all former employees of MCI, C/O ¶ 7–10, worked as "customer service professionals and were members of a 'work team.'" C/O ¶ 15. Plaintiffs were responsible for answering customer service questions and selling MCI services and products over the phone. C/O ¶ 16. In connection with these duties plaintiffs recorded daily all client contacts on

"outbound daily trackers." Exh. A (Montoya Depo. p. 143).

On approximately June 1, 1994, the plaintiffs were assigned a new supervisor, Staci Gardetto. Exh. B (Gardetto Depo. p. 139). Plaintiffs testified that they felt Gardetto was "extremely hostile" and "unapproachable" from the outset. *See e.g.* Exh. C (Zimmerman Depo. p. 123); Exh. D (Silchia Depo. p. 112–14).

According to Gardetto, shortly after she became plaintiffs' supervisor, she began to conclude, primarily based on her observations of plaintiffs, that the number of entries on their outbound daily trackers did not reflect accurately their actual levels of work. Exh. B (Gardetto Depo. p. 191). Apparently, Gardetto suspected that plaintiffs were entering customer contacts which had not actually occurred. *Id.* Gardetto testified that she initiated an investigation on June 8, 1994. Exh. B (Gardetto Depo. p. 185, 190).

Plaintiffs were aware that MCI maintained an "open-door" policy that employees could avail themselves of without risk of retaliation. Under this policy, "retaliation is prohibited against any employee because he/she uses the Open Door." Exh. F. p. 4.

On June 14, 1996, several employees, including plaintiffs, decided to send Tim Montoya to the human resources office to report the problems they were having with Gardetto. C/O ¶ 17; Exh. C (Silchia Depo. p. 134); Exh. B. (Montoya Depo. p. 130, 132–33). Montoya then met with Vern Adams (Adams), Human Resources Manager, and informed him that this group of employees was "very unhappy with the way things were going ... under [Gardetto's] supervision." *Id.* at 133. Gardetto learned of the group complaint to Adams around 4:00 p.m. on June 14th. The next morning, plaintiffs were suspended. MCI Summ.J.Brief p. 4; *see* Exh. B. (Gardetto Depo. p. 190). They were then terminated on June 24, 1994. MCI Summ.J. Brief p. 4. Plaintiffs filed suit on November 9, 1994 in Arapahoe County District Court, State of Colorado. There being diversity of citizenship, the case was removed to this court in December, 1994 pursuant to 28 U.S.C. §§ 1441 and 1446.

## II.

The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable

jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

### III.

Defendant moves for summary judgment on each of plaintiffs' claims. Claim one is pleaded as wrongful discharge based on breach of contract or, in the alternative, promissory estoppel. Plaintiffs allege that MCI breached their "open door" policy by retaliating against them and also breached its "progressive discipline" policy. Defendant argues that plaintiffs' claim that MCI retaliated against them for utilizing its "open door" policy is preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (NLRA). Also, defendant asserts that it is entitled to summary judgment on the breach of contract/promissory estoppel claim based on its alleged "progressive discipline" policy because no employment contract was formed and plaintiffs were employees-at-will. Finally, defendants seeks summary judgment on plaintiffs' defamation claim because plaintiffs rely solely on inadmissible hearsay.

### A. *Breach of Contract/Promissory Estoppel*

1. *Breach of Contract*

a. *Retaliation for utilizing MCI's "open door" policy—National Labor Relations Act concerted activity*

■ Defendants contend that plaintiffs' retaliation claim is preempted by the NLRA, thus depriving this court of subject matter jurisdiction. I agree.

Section 7 of the National Labor Relations Act provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations ... and *to engage in other concerted activities for the purpose of* collective bargaining or *other mutual aid or protection.*

29 U.S.C. § 157 (emphasis added).

■ Section 8 of the NLRA prohibits an employer from, among other things, interfering with employees' exercise of their Section 7 rights. 29 U.S.C. § 158. "Concerted activity" is not defined in the NLRA. However, employees are deemed to have engaged in concerted activity if 1) the individual employee engages in the activity "with or on the authority of [the] other employees" and 2) the employer had reason to know of the concerted nature of the activity. *Gold Coast Restaurant Corp. v. NLRB,* 995 F.2d 257, 263 (D.C.Cir.1993). Thus, the term "clearly enough embraces the activities of employees who have joined together in order to achieve common goals." *NLRB v. City Disposal Systems, Inc.,* 465 U.S. 822, 830, 104 S.Ct. 1505, 1511, 79 L.Ed.2d 839 (1984). It is sufficient for an employee to seek, on behalf of a group, a result which will benefit other employees. *Keokuk Gas Service Co. v. NLRB,* 580 F.2d 328, 333–34 (8th Cir.1978).

■ In this case, there is no assertion that a union existed or there was a collective bargaining agreement in effect. However, "[e]ven though union activities are not specifically involved, the presentment of grievances by a group of employees to their employer constitutes a concerted activity." *NLRB v. Sequoyah Mills, Inc.,* 409 F.2d 606 (10th Cir.1969). The "concerted activities" need not occur in a union setting and it is not necessary that a collective bargaining agreement be in effect. *Koch Supplies, Inc. v. NLRB,* 646 F.2d 1257 (8th Cir.1981).

■ When the employee activity is arguably subject to section 7 or section 8 of the NLRA, federal courts must defer to the exclusive competence of the National Labor Relations Board (NLRB). *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959); *Peabody Galion v. Dollar,* 666 F.2d 1309, 1314 (10th Cir.1981). Preemption by the NLRA occurs, *inter alia,* where "the conduct at issue is subject to the unfair labor practice jurisdiction of the [NLRB]." *Id.* citing *Garmon,* 359 U.S. at 246, 79 S.Ct. at 780. Activities that are arguably protected by section 7 or prohibited by section 8 of the NLRA must be determined "in the first instance [by] the [NLRB]." *Garmon,* 359 U.S. at 244–245, 79 S.Ct. at 779.

Here, plaintiffs allege that they "through their spokesman, Tim Montoya, contacted Vern Adams concerning the unfair treatment of the Plaintiffs by their supervisor, Staci Gardetta (sic)." C/O ¶ 17. Moreover, in deposition testimony Montoya stated that he was "elected to go talk to Vern Adams" and that he had "specific authorization from each of [the plaintiffs and other team members] to represent them." Exh. A (Montoya Depo. p. 129–30). In response to questioning, Montoya agreed that when he met with Adams, he "made it clear to Mr. Adams that [he was] representing a group." *Id.* at 132–33. The other plaintiffs also testified that Montoya represented them when he went to Adams. Exh. C. (Zimmerman Depo. p. 121–22); Exh. E (Piccinetti Depo. p. 70); Exh. D (Silchia Depo. p. 134).

In direct contradiction to ¶ 17 of their Complaint, plaintiffs now argue that "Montoya was not elected or appointed but simply decided to go to Vern Adams as team leader and discuss the entire team as a whole. The plaintiffs were not acting as a group for their mutual aid and protection...." Pltfs. Brief p. 12–13. Such an argument in light of the Complaint and the deposition testimony is, at best, disingenuous.

Under these circumstances, there is no genuine dispute that plaintiffs acted as a group for their mutual aid and protection. Therefore, they engaged in concerted activity within the meaning of section 7 of the NLRA. Consequently, this portion of the breach of contract/promissory estoppel claim lies within the exclusive jurisdiction of the NLRB. This Court, therefore, lacks jurisdiction to hear this claim because it is preempted by the NLRA. Accordingly, I will dismiss, claim one for breach of contract/promissory estoppel based on plaintiffs' allegations that defendant retaliated against them for exercising MCI's "open door" policy.

b. *Breach of contract/promissory estoppel—"at will" employment*

MCI states that based on "at will" employment disclaimer provisions contained in its employment application and employee handbook, plaintiffs did not have an employment contract. Plaintiffs contend that the employment "disclaimer" is inconspicuous and, thus, ineffective as a matter of law. I disagree.

■ In Colorado, an employee who is hired for an indefinite period of time is an at-will employee whose employment may be terminated by either party without cause and without notice.

■ The Colorado Court of Appeals has summarized the effects of employment disclaimers:

[An employer's] manifestation of willingness to be bound can be inferred if there is no disclaimer ... stating that it does not constitute a contract or if such disclaimer, though present, is not clear and conspicuous.

*Ferrera v. Nielsen,* 799 P.2d 458 (Colo.App. 1990). The purpose of the "clear and conspicuous" requirement is to insure that the employee reads the provision and has notice that the company does not intend to form an employment contract. *See id.* at 461. "Summary judgment denying contract claims and promissory estoppel ... is appropriate if the employer has clearly and conspicuously disclaimed intent to enter a contract limiting the right to discharge employees." *Id. See also Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517 (D.Colo.1987). Whether a disclaimer is clear and conspicuous is a question of law. *Durtsche v. American Colloid Co.,* 958 F.2d 1007 (10th Cir.1992).

i. *Employment application disclaimer*

■ Each plaintiff filled out an MCI "Application for Employment" which included a signature and date block on its final page. The last paragraph of the employment application, contained in the applications' "Agreement and Certification" section located directly above each applicants' signature, provides:

If I am employed, I understand that my employment is "at will" and for no definite period of time. Either MCI or I may terminate employment at any time, with or without cause and with or without notice. I further understand that my employment is at will regardless of any statement made by an MCI agent or in an MCI policy,

practice, handbook, program, or any other written or oral materials. I understand that no representatives of MCI, other than the President of MCI or the Senior Vice President of Corporate Human Resources, have authority to make agreements with me concerning the length of my employment. Such agreements must be in writing and signed by either the President of MCI or the Senior Vice President of Corporate Human Resources.

Plts.Exh. K–N.

The employment application disclaimer is not highlighted by capital letters or bold print. However, it is contained in a separate, indented paragraph which contains nothing but information related to the disclaimer. Moreover, the first paragraph of the "Agreement and Certification" section containing the disclaimer states, "My signature below constitutes full acceptance of this employment application in its entirety...." Under these circumstances, I conclude as a matter of law that the disclaimer is conspicuous.

### ii. *Employee Handbook disclaimer*

■■■ At the motions hearing, plaintiffs' counsel stated that there was no other indication of employment at will with MCI and that there was no handbook. However, MCI submits page 9 of the "MCI Employee Handbook for Full–Time Employees" which contains the following paragraph in the section titled **"Notifications: "**

**Employment at Will**

Employment at MCI is "at will" and for no definite period of time. Either MCI or its employees may terminate employment at any time, with or without cause and with or without notice. The employment-at-will relationship remains in effect regardless of any statement made in this handbook, MCI policies and practices, or any other written or oral communications. Only the Chief Executive Officer of MCI or the Senior Vice President of Corporate Human Resources has the authority to make agreements concerning the length of employment. Such agreements must be in writing and signed by either the Chief Executive Officer of MCI or the Senior

Vice President of Corporate Human Resources.

Def.Exh. F p. 9. (Emphasis in original).

This disclaimer, contained in the "Notifications" section, is set off in its own paragraph with the subject of the paragraph "Employment at Will" highlighted in bold and printed in large letters. Like the disclaimer in the employment application, the information in the paragraph relates solely to employment at will. Under these circumstances, I conclude as a matter of law that the handbook disclaimer is conspicuous. Either the employment application disclaimer or the employee handbook is effective in preventing the formation of an express or implied employment contract between plaintiffs and MCI. Thus, the effect of the two disclaimers taken together also results in no employment contract between the parties. *Ferrera*, 799 P.2d at 461; *Therrien*, 670 F.Supp. 1517.

### c. *Breach of contract based on violation of "progressive discipline policy" contained in employee handbook*

■■■ Even if there is a valid employment-at-will disclaimer in an employment handbook, an employer may nevertheless be found to have manifested an intent to be bound by its terms if the handbook contains mandatory termination procedures or requires "just cause" for termination. *Evenson v. Colorado Farm Bureau Mutual Ins. Co.*, 879 P.2d 402 (Colo.App.1993), *cert. denied*, August 29, 1994; *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619 (Colo. App.1988). An employer's distribution to employees of handbooks or policy manuals, which contain specific procedures for termination of employment, when relied on by an employee and supported by the consideration of continued service, may result in the employer becoming contractually bound to comply with those procedures. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988); *Continental Air Lines v. Keenan*, 731 P.2d 708 (Colo.1987).

■■■ Plaintiffs contend that MCI had a progressive discipline policy which MCI breached by terminating them without first issuing warnings or other less severe forms of discipline and without affording them an opportunity to respond to the allegations

against them. C/O ¶ 20. In support of their claim, plaintiffs proffer MCI's "Managing Corrective Action" handout used in training MCI supervisors in the progressive discipline method. Pltfs.Exh. 4. MCI does not dispute that its supervisors were, in fact, trained in this method using the "Managing Corrective Action" handout. However, in MCI's Employee Manual, under the section titled "**Discipline**" it states, in pertinent part:

> If you do not meet the company's expectations of performance and/or conduct, you may be subject to disciplinary action, up to and including termination. *MCI does not employ mandatory, progressive steps of discipline. It is within management's discretion to determine what measures would be appropriate under each circumstance.*

Def.Exh. G p. 46. (Emphasis supplied).

If, in their discretion, MCI utilizes progressive discipline at times, then it is prudent for MCI to train their supervisors in the proper method to administer it. However, this is entirely different from the question whether employees are entitled to progressive discipline. In light of the discipline policy contained in the employee manual and the absence of any evidence that plaintiffs ever received or even saw the supervisors' training handout until MCI provided it during discovery, I conclude, as a matter of law, plaintiffs were not entitled to progressive discipline.

#### 2. *Promissory estoppel claim*

■ MCI also seeks summary judgment on plaintiffs' claim based, in the alternative, on promissory estoppel. Plaintiffs point to statements made to them by various supervisors that they were not "at-will" employees and that they were entitled to progressive discipline. I will grant MCI's motion.

■ The doctrine of promissory estoppel is part of the common law of Colorado. *Vigoda v. Denver Urban Renewal Authority,* 646 P.2d 900 (Colo.1982). Colorado courts have recognized that an employee is entitled to enforce contractual obligations under the theory of promissory estoppel. *Continental*

*Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). The doctrine encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise. *Kiely v. St. Germain,* 670 P.2d 764, 767 (Colo.1983). Justifiable reliance on the representations of another is the cornerstone of this action.

Here, each plaintiff signed an employment application containing a valid employment-at-will disclaimer. Also, the MCI employee handbook contained an equally valid disclaimer. Moreover, there is no evidence before me that any plaintiff received a written agreement concerning the length of employment signed by either the Chief Executive Officer of MCI or the Senior Vice President of Corporate Human Resources. Def.Exh. F p. 9. Absent such an agreement, any statement concerning employment-at-will made by an MCI agent or contained in an MCI policy, practice, handbook, program, or any other written or oral materials, is ineffective. *Id.* Under these circumstance, I conclude as a matter of law that plaintiffs' reliance, if any, on the alleged statements of their supervisors was unreasonable. Accordingly, I will grant MCI's motion for summary judgment on plaintiffs' promissory estoppel claim.

#### B. *Defamation claim*

MCI contends that it is entitled to summary judgment on plaintiffs' defamation claim. I will hold ruling on this claim in abeyance.

■ Plaintiffs allege that "former employee" Greg Gilbert heard Staci Gardetto "accuse each plaintiff of falsifying records." Resp.Brief p. 16. However, Gilbert was an MCI manager, Exh. C (Gilbert Depo. p. 63), who was sitting in for Sue Caroon (Caroon), an upper level MCI manager, Exh. B (Adams Depo. p. 144), at the termination interviews. As an MCI manager, statements made by plaintiffs' supervisor Gardetto in the presence of Gilbert are subject to a qualified privilege between an employer and employee. *Thompson v. Public Service Co. of Colorado,* 800 P.2d 1299, 1301 (Colo.1990); *Churchey,* 759 P.2d 1336 (Colo.1988). Thus, no defama-

tion action will lie based on the meetings between Gilbert, Gardetto, and plaintiffs.

Next, plaintiffs contend that during witness Jeana Blatt's termination meetings with MCI corporate counsel and Sue Caroon, she was told of the number of plaintiffs' incidents of falsification. In support of this contention, plaintiffs refer to "EX 34" which is not part of the materials submitted to the court. MCI references Blatt's deposition Exh. D p. 9–10 in which the following exchange occurs:

Q: And do you remember what [MCI's house counsel] said about any of [the plaintiffs]?

A: I just remember he said the amount of incidents that they had, as far as investigation against these folks.

Q: Did he say anything else about [plaintiffs], other than the number of incidents?

A: Not that I recall.

Q: And he didn't describe what [plaintiffs] had done in terms like misconduct or anything like that?

A: No.

*Id.* at 10.

Plainly, during this meeting Blatt was informed of the number of incidents for which plaintiffs were terminated. However, there is no evidence that MCI corporate counsel and Caroon disclosed the nature of the incidents. Under these circumstances, MCI's statements to Blatt do not rise to the level of defamation.

Third, plaintiffs proffer an affidavit of MCI employee Jacqueline Rencher in which she states that "supervisor John Pezdirth told her that the plaintiffs were terminated for cheating." Pltfs. Brief p. 17. Pltfs.Exh. 30. MCI argues that Rencher and the nature of her testimony was not disclosed until after the discovery deadline of February 1, 1996. MCI asks, pursuant to Fed. R.Civ.P. 37(c) that I disregard Rencher's affidavit in deciding this motion for summary judgment. Rule 37(c) provides:

(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless

such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed....

Plaintiffs respond that they did not disclose Rencher and the nature of her testimony before the discovery deadline because they did not learn of her existence until after February 1, 1996. At the motions hearing, plaintiff's counsel stated that as soon as they learned of Rencher's existence, they arranged to take her affidavit. The same day they obtained Rencher's affidavit, plaintiffs' counsel faxed it to MCI's counsel. Thus, MCI had notice of Rencher and the nature of her testimony on March 18, 1996. Indeed, in MCI's April 10, 1996 reply brief in support of motion for summary judgment, MCI argues that it was "ambush[ed] by this late disclosure." Reply Brief p. 12. I disagree because disclosure was not late with respect to when plaintiffs found the witness, learned the nature of her testimony, and notified MCI. Moreover, between the date MCI received Rencher's affidavit and the hearing on defendant's summary judgment motion, defendants did not attempt to escape the "ambush" by seeking leave to depose her. Under these circumstances, I conclude that plaintiffs' actions were "substantially justified." Fed.R.Civ.P. 37(c).

Accordingly, it is ORDERED that:

1. plaintiffs' claim one for breach of contract/promissory estoppel based on retaliation for utilizing MCI's open door policy is DISMISSED for lack of subject matter jurisdiction;

2. defendant's motion for summary judgment on claim one breach of contract/promissory estoppel based on progressive discipline policy is GRANTED;

3. defendant has 20 days in which it may depose Jacqueline Rencher. Defendant may supplement its motion for summary judgment on plaintiffs' claim two for defamation within 20 days of Rencher's deposition, if taken, within 10 days for plaintiffs to respond; and

4. defendant's motion for summary judgment as to plaintiffs' claim two for defamation is HELD IN ABEYANCE.