Charlyn M. DURAN, an individual, and Melton Smith and Virginia Smith, as Best Friends to Sunny Kim Smith, a minor child, Plaintiffs,

v.

FLAGSTAR CORPORATION, a Delaware corporation, and Denny's Inc., d/b/a Denny's Restaurants, a California corporation, Defendants.

Civil Action No. 97–B–635.

United States District Court, D. Colorado.

Aug. 26, 1998.

Kenneth E. Peck, Bette K. Bushell, Denver, CO, for Plaintiffs.

David R. Hammond, Davis, Graham & Stubbs LLP, Denver, CO, for Defendants.

MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this action arising out of employment relationships, defendants Flagstar Corporation (Flagstar) and Denny's Inc., d/b/a Denny's Restaurants (collectively, Denny's) move for summary judgment on claims one, two, five, and eight through eleven of plaintiffs Charlyn M. Duran (Duran) and Melton Smith and Virginia Smith as best friends to Sunny Kim Smith (Smith) (collectively, plaintiffs). Duran and Smith cross-move for summary judgment on claims three through six. The motions are adequately briefed and oral argument would not materially assist in their resolution. After consideration of the motions and briefs, I will grant the motions in part and deny them in part.

I.

The following facts are undisputed. In August 1994, Duran began working as a server at Denny's on Federal Boulevard in Denver, Colorado. Def. Ex. A, Duran Depo. p. 49–50. In January 1996, she transferred to the Denny's restaurant on Park Avenue West, *id.* at 66–67, and worked there until her employment ended sometime in May 1996. Duran Aff. ¶ 26. From February 1996 until Duran left, Dominique Wortham (Wortham), was the general manager of the Park Avenue West restaurant. Duran claims that Wortham sexually harassed and assaulted her at the restaurant. *See* Complaint ¶¶ 49–50, 63–68, 69–77; Duran Aff., ¶¶ 8–12. She alleges a constructive discharge.

In April 1996, Smith, who was then 15 years old, began working as a hostess at the Park Avenue West restaurant. Def. Ex. B,

Smith Depo., p. 65; Smith Aff., ¶ 3. In May 1996, Smith transferred to the Federal Boulevard restaurant. Smith Depo. ¶ 73. She was supervised by Wortham until her transfer. Smith Aff. ¶ 6. Like Duran, Smith alleges that Wortham sexually harassed and assaulted her until her transfer. *See* Complaint ¶¶ 53–62; 78–87; Smith Aff., ¶¶ 9–19. However, Smith does not claim she was constructively discharged.

## II.

### Claims

| CLAIM NO. | CLAIM | PLAINTIFF | PENDING MOTIONS |
|---|---|---|---|
| One | Assault-Respondeat Superior | Duran | Def. SJ Mtn. |
| Two | Assault - Respondeat Superior | Smith | Def. SJ Mtn. |
| Three | *Quid pro quo* sexual harassment | Duran | Pltf. SJ Mtn. |
| Four | Hostile work environment sexual harassment | Duran | Pltf. SJ Mtn. |
| Five | Hostile work environment sexual harassment | Smith | Def. SJ Mtn. Pltf. SJ Cross–Mtn. |
| Six | Retaliation | Duran | Pltf. SJ Mtn. |
| Seven | Constructive discharge | Duran | None |
| Eight | Breach of contract - Promissory estoppel | Duran | Def. SJ Mtn. |
| Nine | Breach of contract - Promissory estoppel | Smith | Def. SJ Mtn. |
| Ten | Outrageous conduct - Respondeat superior | Duran | Def. SJ Mtn. |
| Eleven | Outrageous conduct - Respondeat superior | Smith | Def. SJ Mtn. |

## III.

■ The very purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir.1995). Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material

fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed. R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494. Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, *see White* at 360 (internal quote and citation omitted), as are conclusory assertions that factual disputes exist. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Where, as here, the parties file cross motions for summary judgment, I assume that no evidence need be considered other than that filed by the parties. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 124 F.3d 1321, 1323 (10th Cir.1997).

## IV.

### *Summary judgment motions*

#### A. *Defense summary judgment motions*

##### 1. **Claims one, two, ten, and eleven— tort claims**

■ Under the theory of *respondeat superior,* plaintiffs bring claims for assault and outrageous conduct committed by Wortham based on his alleged conduct including physical assault, rubbing against plaintiffs' buttocks, grabbing, physically forcing Smith to sit on his lap, spanking Smith, and other sexually assaultive and harassing behavior. *See* C/O; Claims 1, 2, 10, and 11.

■ In Colorado, "[a]n employer may be held responsible for tortious conduct by an employee only if the tort is committed within the course and scope of employment." *DeStefano v. Grabrian,* 763 P.2d 275, 286 (Colo. 1988). Generally, "[a]n employee is acting within the scope of his employment if he is engaged in the work which has been assigned to him by his employer or he is doing what is necessarily incidental to the work which has been assigned to him or which is customary within the business in which the employee is engaged." *Id.* 763 P.2d at 287. For an employer to be liable for an employee's intentional tort, "the employee's intent in committing the tortious act must be to further the employer's business." *Moses v. Diocese of Colorado,* 863 P.2d 310, 329 n. 27 (Colo.1993), *cert. denied,* 511 U.S. 1137, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994). Indeed, "if an employee commits an intentional tort solely for reasons that do not further his employer's business or cannot be considered a natural incident of employment, the employer cannot be vicariously liable." *Id.*

It is undisputed that pursuant to Denny's "Fraternization and Sexual Harassment Policy," Wortham was specifically instructed that Denny's prohibited conduct such as physical and sexual assaults, offensive touchings, and offensive comments. Further, Wortham acknowledged reading and understanding the policy. Def. Ex. E.

The undisputed facts demonstrate that the alleged conduct underlying plaintiffs' assault and outrageous conduct claims were explicitly forbidden by defendants and, therefore, could not have been committed within the course and scope of Wortham's employment. *See Moses*, 863 P.2d at 329 n. 27; *DeStefano*, 763 P.2d at 286. Also, there is no evidence that Wortham's alleged conduct was to further Denny's business.

Relying on *Faragher v. City of Boca Raton*, — U.S. —, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and cases from other jurisdictions, plaintiffs argue that under an expansive reading of Restatement (Second) of Agency, Denny's is vicariously liable for Wortham's alleged conduct. They cite three different theories of liability: 1) "incidental to employment" under Restatement (Second) of Agency, §§ 228–29; 2) "enterprise" theory; and 3) "aided by the agency" theory. *Id.* at § 219(a)(d). I am not persuaded.

■ Because jurisdiction over these claims rests in diversity, I must apply Colorado state law to them. *See Permian Corp. v. Armco Steel Corp.*, 508 F.2d 68, 74 (10th Cir.1974). Thus, *Faragher*, a Title VII action, and the cases cited by plaintiffs from other jurisdictions to support *respondeat superior* liability, have no binding or precedential value in evaluating plaintiffs' Colorado tort claims for assault and outrageous conduct. *See, e.g., Simmons v. United States*, 805 F.2d 1363, 1369–70 (9th Cir.1986); *Mary M v. City of Los Angeles*, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, 1344 (1991); *Doe v. Samaritan Counseling Center*, 791 P.2d 344, 348 (Alaska 1990). I decline plaintiffs' invitation to expand and redefine Colorado's "scope of employment" test. Consequently, I will grant Denny's motion for summary judgment on claims one, two, ten, and eleven.

### 2. Claims eight and nine for breach of contract-promissory estoppel

Plaintiff Duran confesses Denny's motion for summary judgment on claim eight. Still remaining is Denny's summary judgment motion on Smith's claim nine for breach of contract-promissory estoppel.

■ An employee hired as an "at-will" employee may be able to enforce terms of employment in an employee handbook under one of two alternative theories. The employee may be entitled to relief under ordinary contract principles if the handbook provisions create an enforceable contract. *Tuttle v. ANR Freight System, Inc.*, 797 P.2d 825, 827 (Colo.App.1990). However, liability for breach of contract exists only if the employee can prove all the elements of the formation and breach of a contract. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987).

■ Alternatively, if the requisites for contract formation are not present, the employee may be entitled to enforce handbook provisions under the theory of promissory estoppel if she can demonstrate that: 1) the employer should reasonably have expected the employee to consider the handbook as a commitment from the employer to follow the particular policy; 2) the employee reasonably relied on the policy to her detriment; and 3) injustice can be avoided only by enforcement of the policy. *Id.* 731 P.2d at 711–712.

■ When the existence of a contract is in issue and there is conflicting evidence, then it is for the jury to decide whether a contract existed. *Tuttle*, 797 P.2d at 827. Also, whether an employer and employee have entered into a contract based upon an employee handbook is generally a jury question. *Id.*

■ Here, Denny's employee handbook (Handbook) contained the following policy and statements concerning sexual harassment:

### Sexual and Unlawful Workplace Harassment

It is the policy of the Company to prohibit sexual harassment or any other form of unlawful harassment of its employees ... by any person in any form based on race, color, religion, national origin, disability or any other characteristic protected by state or federal law.

Any harassing conduct, whether committed by supervisory, non-supervisory personnel or third parties, such as vendors, suppliers or customers, is prohibited. Harassing conduct is unlawful and a violation of this

policy if it is based on an individual's or group's race, color, religion, gender, national origin, age, disability, or any other characteristic protected by state or federal law. Such conduct can include verbal, physical or written actions.

Conduct is considered harassing if it:

(1) creates a hostile, intimidating or offensive work environment,

(2) unreasonably interferes with an employee's work performance or

(3) adversely impacts an individual's employment opportunities.

**Reporting of Harassment Situations:**

Any employee who believes that he or she has been subjected to or witnessed harassment should **immediately** report the alleged incident to his or her supervisor or any member of management and/or an appropriate Human Resources representative. No employee will be retaliated against for making a complaint or bringing inappropriate conduct to the Company's attention, for preventing unlawful practices, or for participating in an investigation of an alleged act of harassment.

The Company takes matters of harassment very seriously and will immediately investigate any complaint and take appropriate preventive and/or corrective action. Any employee who is found to have engaged in any form of harassment of another employee(s) will be subject to appropriate disciplinary action up to and including immediate termination. If an individual outside the employ of the Company has engaged in any form of harassment of an employee, the Company will take appropriate action to correct the situation.

Pltf. Ex. 6, p. 22. (emphasis in original).

Denny's seeks summary judgment based on the following Handbook·disclaimer:

### Employment at Will

**It is the policy of the Company that all employees who do not have a written employment agreement expressly providing otherwise are employed at the will of the Company for an indefinite period, regardless of the time and manner of payment of wages and salary or other compensation. Employment may be terminated at any time by the Company or the employee, with or without notice or reason.**

**The Company reserves the right to amend, supplement, rescind or revise any policies, practices or benefits described in this Handbook, other than its employment-at-will provisions, as it deems appropriate in its sole and absolute discretion.**

**The policies in this Handbook supersede and replace all existing policies covering the same subject, whether existing in writing or in practice and whether located in personnel/human resource material (such as employee handbooks) or operations materials.**

Pltf. Ex. 6, p. 9. (emphasis in original).

Relying on *Jones v. Unisys Corp.*, 54 F.3d 624 (10th Cir.1995) and *Silchia v. MCI Telecommunications Corp.*, 942 F.Supp. 1369 (D.Colo.1996), Denny's contends that the Handbook disclaimer "is sufficient to disclaim contractual intent with respect to *any* and *all* of the policies contained in the handbook, including the sexual harassment policy at issue." Reply Brief, p. 13 (emphasis in original). I disagree.

By its express language, the disclaimer applied to the *term* of employment—not the *conditions* of employment. Also, by its title, *"Employment at Will,"* the disclaimer was limited in purpose and scope to "employment at will." *See* Pltf. Ex. 6, p. 22. Thus, it established that employees without a written employment agreement were at-will employees who were terminable for any reason with or without notice. It did not affect the remaining terms of the Handbook.

The language in the disclaimer concerning its reservation of the right to amend, supplement, rescind or revise any policy, is not helpful to Denny's. Where, as here, there is no evidence that Denny's did, in fact, revise or rescind its sexual harassment policy, its ability to do so is irrelevant. Moreover, *Jones v. Unisys* and *Silchia* concerned termination of employment in light of a disclaimer stating the employers' intent to maintain an at-will relationship with their employees. *Jones,* 54 F.3d at 629; *Silchia,* 942 F.Supp. at 1374–75. Smith's contract based claims relate to her conditions. of em-

**1202**

ployment, not its term. Although the parties did not address the issue of damages, as to this claim, they may be nominal. Consequently, I will deny Denny's motion for summary judgment on claim nine.

### 3. Smith's claim five—hostile work environment—sexual harassment

Denny's seeks summary judgment on Smith's claim five for Title VII hostile work environment-sexual harassment contending that the undisputed facts show Smith does not meet the requirements in *Faragher v. City of Boca Raton*, —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) to maintain this claim. I will grant Denny's motion.

■■■ The *Faragher* Court set forth two methods for analyzing sexual harassment claims where, as here, the alleged discriminatory conduct was committed by the plaintiff's supervisor; one in which tangible adverse employment action resulted and the other where it did not. *Id.* —— U.S. ——, 118 S.Ct. at 2284, 2293–94. Where an employment action occurred with tangible results, "like hiring, firing, promotion, compensation, and work assignment," the employer is liable once the discrimination is shown. *Id.* —— U.S. ——, 118 S.Ct. at 2284 *citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 70–71, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). A tangible employment action also includes " a[n] undesirable reassignment." *Burlington Industries, Inc. v. Ellerth*, —— U.S. ——, 118 S.Ct. 2257, 2260, 141 L.Ed.2d 633 (1998). Employer liability under these circumstances attaches "whether or not the employer knew, should have known, or approved of the supervisor's actions." *Id.* 477 U.S. at 75, 106 S.Ct. 2399.

■■■ Where no tangible adverse employment action is taken, "a defending employer may raise an affirmative defense to liability or damages...." *Faragher*, —— U.S. at ——, 118 S.Ct. at 2293; Fed.R.Civ.P. 8(c). The defense contains two necessary elements: a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm

otherwise. *Id.; Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir.1998).

In light of *Faragher*, on July 20, 1998, plaintiffs filed an amendment to their complaint and pretrial order to include an assertion that they suffered tangible employment actions as a result of defendants' conduct. Mtn. to Amend, ¶ 3. Defendants filed their amended answer on July 23, 1998, asserting the *Faragher* affirmative defense.

#### a. *Tangible employment action*

■■■ It is undisputed that Smith worked several weeks under Wortham's supervision at the Park Avenue West restaurant. She then asked Roy Richards (Richards), the manager at the Federal Boulevard Denny's, for a transfer to his restaurant. He agreed and Smith transferred. Smith also testified she never told a Denny's manager, including Richards, about the alleged incidents involving Wortham. Smith Depo. p. 117. According to Smith, however, after she transferred to the Federal Boulevard restaurant, she called Denny's 1–800 number to report the incidents. *Id.;* Smith Depo. ¶ 25.

Seeking to fall under the first method by which an employer may be vicariously liable for a supervisor's conduct, Smith asserts her transfer from the restaurant Wortham managed to another Denny's, was a "tangible employment action." I disagree. Where, as here, Smith's transfer occurred at her request rather than Denny's, the transfer does not constitute an "undesirable reassignment." *Ellerth*, —— U.S. ——, 118 S.Ct. at 2260, 141 L.Ed.2d 633. In her response brief, Smith states also that, "in effect, [she] was constructively discharged from her employment with Denny's by Wortham's sexual harassment of her." Pltf. Resp. Brief, p. 6.

■■■ An assertion in a brief does not amend the complaint. In any event, to establish that she was constructively discharged, Smith would have to show that she was forced to quit because of intolerable working conditions due to sexual harassment. *See Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir.1995). However, it is undisputed that Smith did not resign her employment, but instead was terminated for

tardiness and absenteeism. She simply quit coming to work. Under these facts, Smith cannot rely on an assertion that she was constructively discharged to demonstrate that she suffered a tangible employment action. Also, in the Tenth Circuit, a sexual harassment plaintiff cannot state a claim for constructive discharge where, as here, a job transfer ends the alleged harassment. *Buchanan v. Sherrill*, 51 F.3d 227, 229 (10th Cir.1995). Smith makes no allegation that the alleged harassment continued after she transferred. Thus, Smith's voluntary transfer from Wortham's restaurant to another Denny's may not serve as a basis to argue that she was constructively discharged. Under these circumstances, therefore, I conclude that no tangible employment action resulted from the alleged sexual harassment.

### b. *Faragher affirmative defense*

■ Because no tangible employment action resulted from the alleged harassment, Denny's is entitled to raise the *Faragher* affirmative defense and can defeat Smith's claim by establishing there is no genuine dispute that: 1) it exercised reasonable care to prevent and correct promptly any sexual harassment; and 2) Smith unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *See Faragher*, —— U.S. ——, 118 S.Ct. at 2293, 141 L.Ed.2d 662.

#### i. *Denny's sexual harassment policies and procedures*

As set out in section IV A(2), Denny's Employee Handbook contained a strict prohibition against sexual harassment and provided how such conduct was to be reported. Smith concedes that Denny's sexual harassment policy: 1) makes it clear that sexual harassment is strictly prohibited; 2) defines sexual harassment in a broad inclusive fashion; 3) informs Denny's employees how to report sexual harassment; 4) permits reporting through a broad range of channels including any manager, Human Resources representatives, and a 1–800 telephone number; 5) contains an anti-retaliation provision; and 6) provides that Denny's "will investigate and take appropriate preventive and/or corrective action." Pltf. Ex. 6, p. 22. Smith states she

received the Handbook and read it, remembered looking over the sexual harassment policy, understood Denny's policy and what constituted sexual harassment, and knew the channels through which she could complain. Def. Ex. B, Smith Depo., pp. 67–69. In light of these undisputed facts, there is no genuine dispute that Denny's exercised reasonable care to prevent and correct promptly any sexual harassment in its organization. Therefore, Denny's has met the first prong of the affirmative defense.

#### ii. *Smith's actions to prevent or correct the alleged sexual harassment*

It is undisputed that Smith did not complain to Denny's about Wortham's alleged sexual harassment while she was working at the Park Avenue West restaurant. Def. Ex. B, p. 117. Smith states also that the first and only time she complained about the alleged harassment was when she called the 1–800 number after she transferred to the Federal Boulevard restaurant. Pltf. Ex. 3, ¶ 25. According to Smith, no one from Denny's ever returned her call. *Id.* In response, Denny's produces 1–800 records for the pertinent time period which do not show a call from Smith. I conclude no reasonable juror could find for Smith on this issue. Moreover, I question its materiality, as the report, if made, was after Smith voluntarily left the offending environment. Therefore, I will grant Denny's motion for summary judgment on Smith's claim five.

### B. *Plaintiffs' partial summary judgment cross-motion-sexual harassment and retaliation claims*

■ Smith and Duran move for summary judgment on their sexual harassment claims three (Duran), four (Duran), five (Smith) and claim six for retaliation (Duran), contending that the material facts are not in dispute. Denny's is entitled to summary judgment on Smith's claim five. As to Duran's claims three and four, the evidence proffered by the parties reveals genuine factual disputes about whether Duran was ever subjected to sexual harassment by Wortham. *See, e.g.,* Wortham Aff., ¶¶ 5–16; Hahn Aff., ¶¶ 16–18;

Willis Depo., p. 70; Andrade Depo. pp. 32, 34; Burnside Depo.; pp. 70, 76.

■ As to claim six, Duran claims Denny's retaliated against her by reducing her work hours and, ultimately, terminating her. C/O ¶¶ 91–92. However, the circumstances surrounding Duran's reduced hours are also in dispute. *See, e.g.,* Hahn Aff., ¶¶ 19, 21; Burnside Depo., pp. 29–30; Burnside Aff. ¶ 12. Also, Denny's provides evidence that rather than being terminated, Duran quit. *See, e.g.,* Wortham Aff. ¶ 18; Burnside Depo., p. 40; Burnside Aff. ¶ 17. Under these circumstances, I will deny plaintiffs' cross-motions.

Based on the foregoing, the claims remaining for trial are claims three, four, six, seven and nine.

Accordingly, IT IS ORDERED THAT:

1. defendants' motion for summary judgment is GRANTED as to:

    a. plaintiff Duran's claim one for assault and claim ten for outrageous conduct;

    b. plaintiff Smith's claim two for assault and claim eleven for outrageous conduct;

2. defendants' motion for summary judgment on Duran's claim eight for breach of contract-promissory estoppel is GRANTED as confessed;

3. defendants' motion for summary judgment on Smith's claim nine for breach of contract-promissory estoppel is DENIED;

4. defendants' motion for summary judgment on Smith's claim five for hostile work environment-sexual harassment is GRANTED; and

5. plaintiffs' cross-motion for summary judgment on claim three for *quid pro quo* sexual harassment, claims four and five for hostile work environment-sexual harassment, and claim six for retaliation are DENIED.