**Robert WINKLER, Plaintiff,**

v.

**BOWLMOR AMF, Defendant.**

**Civil Action No 15-cv-01686-RBJ**

United States District Court,
D. Colorado.

Signed 09/12/2016

Matthew Kent Barringer, Matthew K. Barringer, P.C., Denver, CO, for Plaintiff.

Meryl Eschen Mills, Alice Conway Powers, Lewis Brisbois Bisgaard & Smith, LLP, Denver, CO, for Defendant.

## ORDER

R. Brooke Jackson, United States District Judge

This matter is before the Court on defendant Bowlmor AMF's motion for summary judgment [ECF No. 18]. For the reasons described below, the motion is GRANTED.

## I. FACTS

The plaintiff, Robert Winkler, alleges that in September 2014 he was employed by Brunswick Bowling & Billiards as Director of Operations. Complaint, ECF No. 3, at ¶8. Also in September 2014 defendant Bowlmor AMF ("AMF") acquired Brunswick. *Id.* at ¶9. Plaintiff continued his employment under AMF, now as a District Manager. *Id.* at ¶10; ECF No. 18 at 2.

In early March, 2015 an AMF supervisor named Jody Pastula and Mr. Winkler toured the Denver market, and apparently Mr. Pastula identified some problem areas that he wanted Mr. Winkler to address. *See* ECF No. 21-4 (email exchange). Mr. Winkler responded on March 12, 2015, indicating that he and his team had begun to address the issues and attaching a to-do list. *Id.* On March 14, 2015 Mr. Pastula thanked Mr. Winkler for providing a "detailed action plan moving forward" and also indicated that he would call him the next day to discuss some staffing opportunities. *Id.*

On May 4, 2015 Mr. Pastula sent plaintiff an email listing what he considered to be problems with several of plaintiff's venues. ECF No. 21-3 at 1–2. Defendant terminated plaintiff on June 15, 2015, allegedly for unsatisfactory performance. ECF No. 18-7 at ¶10 (Affidavit of Heather Webb, Vice President of Human Resources).

In his Complaint Mr. Winkler first alleges that because defendant fired him without following its progressive discipline procedures, defendant breached an implied employment contract with plaintiff. ECF No. 3 at ¶¶11-19. Second, he alleges that defendant is liable under a theory of promissory estoppel, having promised not to fire plaintiff without following certain procedures. *Id.* at ¶¶20-25. Plaintiff appears to base both counts on (1) the Bowlmor AMF 2013 Associate Handbook ("Associate Handbook"), (2) the company's standalone "Progressive Discipline" policy, and (3) the e-mail exchange, mentioned *supra*, between plaintiff and his supervisor in March of 2015. *See* ECF No. 21 at 6–9.

### Bowlmor AMF 2013 Associate Handbook

During plaintiff's tenure with defendant, defendant maintained an employee handbook—the Associate Handbook— that spelled out possible disciplinary actions AMF "may" take if it found that its employees committed any of the policy's proscribed conduct. ECF No. 21-1 at 1. The policy's list of prohibited conduct was non-exhaustive. *Id.* at 2. The policy also stated—under a separate headline entitled "Immediate Dismissals/Misconduct"—that if an employee violated any of AMF's policies, AMF "may terminate your employment immediately and without warning." *Id.* at 1. In a separate paragraph directly below the non-exhaustive list of proscribed conduct, the handbook disclaimed any change to the "at-will" nature of the company-employee relationship. *Id.* at 2 (stating that this policy "does not change the employment-at-will relationship between [the employee] and the company").

Finally, the handbook contained a separate section entitled "Employment At Will" in bold capital letters. ECF No. 18-8 at 2. That section stated the following:

Neither this handbook nor any other company document confers any contrac-

tual right, either expressed or implied, to remain an associate of the company. It also does not guarantee any fixed terms and conditions of your employment. Your employment is not for any specific time and may be terminated at will, with or without cause and without prior notice by the company. You may also resign for any reason at any time. A supervisor or other representative of the company (except the Vice Chairman or CEO) does not have the authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to the above information.

*Id.*

### Standalone "Progressive Discipline" Policy

In addition to the Associate Handbook, AMF maintained a standalone "Progressive Discipline" policy. *See* ECF No. 21-2 at 1. Like the Associate Handbook, AMF's standalone Progressive Discipline policy spelled out guidelines that the company "may" take if an employee committed any of the proscribed conduct found on the non-exhaustive list. *Id.* Just like the Associate Handbook, the standalone Progressive Discipline policy stated that this policy was discretionary, and that it "does not alter the fact that associates are employed on an at-will basis which means that either the associate or Bowlmor AMF can terminate the employment relationship at any time with or without cause." *Id.* at 2.

### II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (internal quotation

marks and citation omitted). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (citation omitted).

### III. ANALYSIS

Defendant asserts that it is entitled to summary judgment on plaintiff's breach of contract claim and on plaintiff's promissory estoppel claim because neither (1) the Associate Handbook, (2) the standalone Progressive Discipline policy, nor (3) Mr. Pastula's e-mail exchange with plaintiff altered Colorado's presumption of "at-will" employment. ECF No. 18 at 6–11. Because both of defendant's policies clearly and conspicuously disclaimed any intent to change plaintiff's at-will employment, and because AMF did not otherwise make an offer or promise to plaintiff to change that relationship, I agree with defendant.

### A. Colorado Law on "At-Will" Employment.

■■■ Colorado law presumes that an employee hired for an indefinite period of time is an "at-will" employee. *Continental Air Lines v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). This relationship means that either the company or the employee can terminate the employment relationship "without cause and without notice," and that "termination does not give rise to a cause of action." *Id.* However, this presumption is rebuttable. In certain circum-

stances an "at-will" employee may enforce an employer's statements, such as those made in an employee manual, on a theory of (1) a breach of implied contract or (2) promissory estoppel. *Id.* at 711–12.

### 1. Breach of Implied Contract

■ In order to establish breach of an implied contract, the employee must first show that through the employer's statements "the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain[.]" *Id.* at 711 (citing Restatement (Second) of Contracts § 24 (1981)). Secondly, the employee must show "that his initial or continued employment constituted acceptance of and consideration for those procedures." *Id.*

■ Even if an employer has made statements about certain termination procedures in employee handbooks, however, an employer is entitled to summary judgment "if the employer has clearly and conspicuously disclaimed intent to enter into a contract limiting the right to discharge employees." *George v. Ute Water Conservancy Dist.,* 950 P.2d 1195, 1198 (Colo. App. 1997). Factors that courts have weighed in deciding whether a disclaimer is "clear and conspicuous" are as follows: (1) whether the policy is labeled; (2) whether the disclaimer appears on the first page of the policy; (3) if the policy is signed by the employee; (4) where the disclaimer appears; (5) whether the disclaimer references "at-will" employment; and (6) the proximity of the disclaimer to the termination guidelines. *See, e.g., Trujillo v. Atmos Energy Corp.,* 896 F.Supp.2d 949, 956 (D. Colo. 2012); *Silchia v. MCI Telecomm. Corp.,* 942 F.Supp. 1369, 1376 (D. Colo. 1996); *Ferrera v. Nielsen,* 799 P.2d 458, 461 (Colo. App. 1990).

■ Importantly, "[e]ven if there is a valid employment-at-will disclaimer in an employment handbook, an employer may nevertheless be found to have manifested an intent to be bound by its terms if the handbook contains mandatory termination procedures or requires 'just cause' for termination." *Silchia,* 942 F.Supp. at 1375 (citing *Evenson v. Colorado Farm Bureau Mutual Ins. Co.,* 879 P.2d 402, 409 (Colo. App. 1993)), *cert. denied,* August 29, 1994), and *Cronk v. Intermountain Rural Elec. Ass'n,* 765 P.2d 619 (Colo. App. 1988)). Likewise, other documents provided to the employee that require just cause and provide specific procedures to be followed for termination can overcome a disclaimer in an employee handbook. *See Allabashi v. Lincoln Nat'l Sales Corp. of Colorado-Wyoming,* 824 P.2d 1, 3 (Colo. App. 1991) (holding that statements such as these within employer policies create issue of fact over whether an employment contract existed).

### 2. Promissory Estoppel

■ If an employer's policies are not found to have formed an implied contract, an "at-will" employee in Colorado can nevertheless hold an employer liable under a theory of promissory estoppel. *Continental Air Lines,* 731 P.2d at 712. To do so, the employee must show that "the employer should reasonably have expected the employee to consider the employee manual as a commitment from the employer to follow the termination procedures, that the employee reasonably relied on the termination procedures to his detriment, and that injustice can be avoided only by enforcement of the termination procedures." *Id.* If an employer's termination policies contain disclaimers, however, courts have found that, as a matter of law, an employee cannot reasonably rely on these policies or on any other statements by an employer regarding termination procedures. *Silchia,*

942 F.Supp. at 1376 (finding summary judgment appropriate on a promissory estoppel claim where company policies contained valid disclaimers); *Ferrera*, 799 P.2d at 461 (same).

### B. AMF's Alleged Promises and Disclaimers.

#### 1. Associate Handbook

■ An employee handbook cannot serve as the basis for a breach of implied contract or promissory estoppel claim if it clearly and conspicuously disclaims an intent to be bound by its terms. *See Silchia*, 942 F.Supp. at 1375; *Ferrera*, 799 P.2d at 461. As indicated above, AMF's handbook includes a section under the heading "Employment At Will" that explicitly states that neither the handbook nor any other AMF document "confers any contractual right, either express or implied, to remain an associate of the company." *Id.* The handbook also makes clear under a separate heading entitled "Immediate Dismissals/Misconduct" that AMF "may terminate [the employee's] employment immediately and without warning." *Id.* Lastly, the policy states in a separate two-sentence paragraph directly below its list of proscribed conduct that this policy "does not change the employment-at-will relationship between you and the company." *Id.* at 2.

I interpret these provisions by their plain language as a clear and conspicuous disclaimer of an intent to be bound by the handbook's procedures. *See, e.g., Silchia*, 942 F.Supp. at 1375 (holding that a disclaimer under the "Notifications" section of employer's policy that was "set off in its own paragraph" that related "solely to employment at will" was clear and conspicuous). Importantly, the handbook does not otherwise contain mandatory procedures or a "just cause" requirement that other courts have found create a factual issue over an employer's intent to be bound. *See, e.g., Allabashi*, 824 P.2d at 3. Accordingly,

I conclude that defendant is entitled to summary judgment on plaintiff's claims based on the Associate Handbook.

#### 2. Standalone Progressive Discipline Policy

■ AMF's standalone Progressive Discipline policy likewise cannot serve as the basis for either a breach of implied contract claim or promissory estoppel claim. It uses discretionary language such as "the company *may*, under appropriate circumstances, take disciplinary action. ECF No. 21-1 (emphasis added). Concerning written warnings, the Progressive Discipline policy states that "[y]our manager *should* discuss with you performance concerns ...." *Id.* (emphasis added). The handbook does state that a record of the employee's discussion with the manager will be placed in the employee's file in the Human Resources Department. *Id.* However, this seemingly mandatory procedure only takes effect if the company has chosen to follow the progressive discipline procedures.

Especially in the context of the Associate Handbook's express invocation of the "at will doctrine" and indication that no AMF document may be construed otherwise, I interpret the standalone Progressive Discipline policy as another clear and conspicuous disclaimer of an intent by AMF to be contractually bound by its terms. *See Silchia*, 942 F.Supp. at 1375 ("[T]he effect of the two disclaimers taken together also results in no employment contract between the parties."). *See also* ECF No. 21-2 at 1 (listing "examples of conduct that 'may' result in disciplinary action"); *id.* at 2 (stating that the list of proscribed conduct "does not require any specific disciplinary action and does not alter the fact that associates are employed on an at-will basis"); *id.* ("Bowlmor AMF can terminate the employment relationship at any time with or without cause."); *id.* ("Bowlmor AMF's practice of associate

discipline does not imply that 'progressive' discipline is always required or that employment may be terminated only for good cause.").

Moreover, like the Associate Handbook, the standalone policy does not include mandatory procedures or make "just cause" a requirement that would create an issue of fact. *See Allabashi*, 824 P.2d at 3. Accordingly, I conclude that defendant is also entitled to summary judgment on plaintiff's claims based on the standalone Progressive Discipline policy.

### 3. Pastula-Winkler E-Mail Exchange

■ Finally, plaintiff cannot maintain a breach of implied contract or promissory estoppel claim based on the e-mail exchange between plaintiff and Pastula for two reasons: (1) Pastula did not make any statements to plaintiff that AMF would follow certain termination procedures; and (2) even if Pastula had made an offer or promise, plaintiff's reliance on it would have been unreasonable.

First, Mr. Pastula's two-sentence e-mail to plaintiff in March of 2015 did not make an offer or promise of continued employment. In a response to plaintiff's "action plan" e-mail, Mr. Pastula merely thanked plaintiff for his earlier suggestions on how to improve the deficiencies with plaintiff's venues that Mr. Pastula had earlier pointed out. ECF No. 21-4 at 1. Mr. Pastula then informed plaintiff that he would call him the next day to discuss an unrelated matter. *Id.* That was it. Mr. Pastula did not state that he was adopting the action plan that plaintiff put forward or that AMF would only fire plaintiff if he failed to carry out that plan or failed to remedy the issues with his locations. AMF did not therefore make statements to plaintiff to follow certain procedures that could serve as the basis of a breach of implied contract or promissory estoppel claim. *See Continental Air Lines*, 731 P.2d at 711–12. This conclusion is further supported by plain-tiff's own admissions that he never considered himself anything but an "at-will" employee while working for AMF, and that he never considered himself to have received a promise that he could only be terminated in a certain manner. ECF No.18-3 at 12, 18.

■ Second, even if Pastula had made plaintiff an offer or promise, plaintiff's reliance on that offer or promise would be unreasonable in light of the company's handbook. ECF No. 18-8 at 2. AMF's handbook stated that only AMF's Vice Chairman or its CEO could alter an employee's at-will status. *Id.* Mr. Pastula held either of those titles. *See* ECF No. 18 at 3, ¶5. In addition, plaintiff admits that he never received an employment contract from either of those higher-ups. ECF No. 18-3 at 5–6. *See Silchia*, 942 F.Supp. at 1376 (employee's reliance on statements by employees other than those authorized under company policies to alter employee's employment status was unreasonable).

Accordingly, defendant is entitled to summary judgment on plaintiff's claims based on this e-mail exchange as well.

### ORDER

The Court finds that plaintiff has not shown that there is a genuine dispute of material fact, and the Court concludes that the defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment [ECF No. 18] is GRANTED. This civil action is dismissed with prejudice. As the prevail party the defendant is award is reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.