FILED
United States Court of Appeals
Tenth Circuit

March 7, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAN SIDLO,

    Plaintiff - Appellant,

v.

MILLERCOORS, LLC,

    Defendant - Appellee.

No. 17-1000
(D.C. No. 1:15-CV-01672-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

    Jan Sidlo, a man of Slovakian descent who was terminated from his job as a mechanic and operating engineer for MillerCoors, LLC, brought suit alleging discrimination based on national origin and age in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, wrongful termination in violation of Colorado public policy, and breach of contract. The

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court granted summary judgment for MillerCoors on all claims.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Sidlo was born in Bratislava in what is now Slovakia. In March 2002, he was hired by MillerCoors's predecessor company as a "Mechanic/Operating Engineer." Appellant's App. at 51. His employment there was governed by the "Supplemental Policy: Golden Manufacturing Operators, Maintenance Employees and Technicians" (Supplemental Policy). *Id*. at 216. Under the terms of the policy, MillerCoors terminated Sidlo three times. He was reinstated through the internal appeals process after the first two terminations.[2] This suit concerns his third and final termination in 2013.

The first major disciplinary action against Sidlo occurred in August 2012, when MillerCoors terminated him for allegedly stealing company property and for driving a company vehicle off company property.[3] Sidlo appealed the August 2012

---

[1] Sidlo withdrew his age-discrimination claim before the district court entered this order.

[2] The Supplemental Policy allows employees to appeal formal, written disciplinary actions to an appeals board, which reviews the facts of the case and renders a final and binding decision upholding, modifying, or reversing the disciplinary action.

[3] This (and Sidlo's following two terminations) was a "first offense termination[.]" *Id.* at 225. The Supplemental Policy explains that "[s]ome violations are so serious that the first offense warrants termination. An employee may be placed on suspension in order to investigate an incident or issue in question; pay during such suspension will be dependent upon the circumstances. Disciplinary suspensions are

2

termination, and so reduced the termination to an eighty-hour suspension. MillerCoors reinstated him in October 2012.[4]

Sidlo alleges that when he returned from his 2012 suspension, he "was subjected to heightened scrutiny and hostility at work." Appellant's Opening Br. at 20. He describes six different discriminatory actions after his return: (1) a comment about his national origin, (2) interference with his computer access, (3) refusal to provide a voucher to replace scratched safety glasses, (4) singling him out to perform certain duties, (5) discrimination and harassment during the litigation, and (6) retaliation for reporting another employee for not wearing protective gear.[5] We describe these events in turn.

---

considered a final written warning and can be up to ten (10) scheduled working days without pay (up to 80 hours of pay)." *Id.*

For less-serious offenses, the Supplemental Policy describes three disciplinary actions—a written warning for the first offense, a final written warning for the second offense, and discharge for the third offense. *Id.* at 226.

[4] MillerCoors argues that Sidlo can't use this suspension to support his claim because he didn't raise it in the district court. But Sidlo concedes that this incident didn't stem from national-origin or age discrimination.

[5] At the district court, Sidlo also asserted that he was "harassed about his prominent accent" and that coworkers called him "Borat." Appellant's App. at 10, 65. Sidlo failed to include these allegations in the briefing before this court. So they're waived. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) (noting that issues not argued in appellant's opening brief are waived).

First, Sidlo alleges that his supervisor, Greg Miller, said that he would "not tolerate any foreigner bullshit"[6] and that Sidlo was "walking on thin ice and had better watch every step." Appellant's Opening Br. at 6. Sidlo describes this conversation as "disrespectful" and alleges he later attempted to talk to Human Resources about the incident. Appellant's App. at 83–84.

Second, on returning from that same 2012 suspension, Sidlo couldn't access the computer system. He claims to have raised this problem to multiple managers, and yet "nobody did anything about it." *Id.* at 87. Sidlo says that he told Miller about the computer-access issue, but that nothing happened.

MillerCoors offered evidence, including a two-week e-mail chain between Miller and the company's IT department, that Miller had attempted to fix Sidlo's computer problem. Miller stated in one such e-mail: "We need to know what the status of this is! The employee needs to have access to a computer to do his job." *Id.* at 124. But Sidlo frames the lack of computer access as discrimination, and argues that it interfered with his ability to do his job.

Third, after his 2012 return, Sidlo contends someone scratched the prescription safety glasses that MillerCoors had provided to him through a voucher program. He said his glasses looked "like somebody run the sandpaper over it or something." *Id.* at 86. But employees generally receive a voucher for new glasses only once a year. To qualify for a second voucher within the same year, the employee needs to show that

---

[6] Sidlo's description of this statement took various forms. The phrasing that we use in the opinion text comes from Sidlo's briefing.

4

the damage resulted from workplace use, not from employee negligence. He requested that Miller sign paperwork enabling the company to provide a second voucher for a new pair of prescription safety glasses. And after not hearing from Miller, Sidlo reached out to safety-department employee, Hugh Garrison, who ultimately approved the glasses, but not until after Sidlo received a warning for not wearing safety glasses.

Fourth, in January 2013, MillerCoors terminated Sidlo because of insubordination. Miller claims that he asked Sidlo to investigate a steam leak and that Sidlo didn't follow up with Miller or fix the problem. This led to Sidlo's termination. Sidlo appealed, which reduced the termination to a final warning, with a forty-eight-hour suspension. Sidlo now alleges that "Miller singled [out] Mr. Sidlo" to repair the steam leak. Appellant's Opening Br. at 20.

Fifth, Sidlo alleges that this litigation shows his mistreatment by MillerCoors, arguing that "[t]he national origin discrimination and harassment even permeates into this litigation as becomes evident in the context of the questions posited by counsel for MillerCoors during his deposition." *Id.* at 21.[7]

---

[7] Sidlo doesn't explain this argument but cites to pieces of the deposition testimony as "examples of these exchanges." Appellant's Opening Br. at 21 n.4 (citing Appellant's App. at 80, 57:2–23; 86, 96:4–25, 96:1–4). For example, the following exchange (not specifically referenced by Sidlo) took place during Sidlo's deposition:

> MillerCoors's Lawyer: Congratulations. Now let me get back to my question.
> Sidlo: Why you are sarcastic?

And sixth, in May 2013, Sidlo reported another hourly employee, Mike Lopez, for not wearing the correct personal protective equipment. Lopez was disciplined as a result. Sidlo later alleges that his September 2013 termination was a form of retaliation for reporting Lopez.

After these incidents, in September 2013, the events culminating in Sidlo's final termination took place. He was assigned to perform a procedure known as the Lockout/Tagout on an ammonia system on September 23. This is a safety procedure designed to ensure that dangerous machines are properly shut off before the completion of maintenance or servicing work, in this case, an overhaul of the ammonia system. The piece of equipment to be replaced is locked out and isolated, and then tagged to notify others that the piece of equipment will be replaced.

MillerCoors employees changed the plan for the Lockout/Tagout procedure before Sidlo performed it. But the day after Sidlo completed the Lockout/Tagout procedure, the crew working on the system noticed that the procedure hadn't been correctly completed.

Brian Kostrna, a utilities employee, reported a "near miss." Any employee can report a near miss. A near miss does not have a precise definition; employees can report any type of safety concern.

---

MillerCoors's Lawyer: Because you're not answering questions, you're narrating. So would you please back up and let me understand something.

Appellant's App. at 86.

6

Randy Rea, the manager of Sidlo's department, learned of the near miss and that Sidlo had performed the Lockout/Tagout procedure that precipitated the incident. In his capacity as manager, Rea began an investigation into the near miss, and Process Safety Engineer Ron Henry completed an in-depth investigation. The incident-investigation form named four other utilities operators as being involved with the incident. Henry concluded that human factors caused the near miss and that the operator (Sidlo) hadn't followed the plan or complied with the corrections to the plan. He also identified two failings by the maintenance team.

About a week later, a second incident took place. In another area of the facility, a hose carrying ammonia was connected to a vent line instead of a pump-out station, resulting in ammonia being released into the atmosphere. The release triggered a vent alarm and a partial evacuation of the brewery. MillerCoors blamed Sidlo for the incident. Sidlo, in turn, complained about other employees touching and mislabeling the equipment. He now alleges that the mislabeling was intentional.

MillerCoors categorized the ammonia release as an "incident," which prompted an investigation, this time by Rea, Sidlo's manager. During his investigation, Rea received reports that Sidlo had retaliated against Kostrna for reporting the near miss by telling Kostrna he would no longer work with him.

On October 2, 2013, after the investigation, MillerCoors terminated Sidlo's employment for (1) gross misconduct or negligence; (2) harassing, abusing, assaulting, or threatening another person by threatening not to work with Kostrna; and (3) insubordination. Sidlo appealed. Typically, the appeals process includes a

pre-appeal meeting to discuss in general terms what arguments and evidence the parties will present at the appeal, though the Supplemental Policy does not mention any need for one. But MillerCoors didn't hold such a meeting and instead proceeded straight to the appeal-board hearing.

At the hearing, MillerCoors proffered three reasons for Sidlo's termination: (1) the near miss, (2) Sidlo's retaliation against the employee who reported the near miss, and (3) the ammonia release. During the proceedings, Sidlo alleged age discrimination, but he didn't mention national-origin discrimination. After presentations from both sides, the appeal board upheld his termination.

On April 4, 2014, Sidlo filed a charge of discrimination with the Equal Employment Opportunity Commission, and received a notice of right to file. The following day, he filed a complaint in federal district court.

Sidlo's complaint sought relief for (1) national-origin discrimination and harassment, (2) age discrimination, (3) wrongful discharge in violation of Colorado public policy, and (4) breach of an implied contract of employment. MillerCoors moved for summary judgment on all claims. In response to the motion for summary judgment, Sidlo withdrew his age-discrimination claim. The district court ruled in favor of MillerCoors on the remaining three claims, dismissing the case and awarding costs to MillerCoors. Sidlo timely appealed.

## DISCUSSION

On appeal, Sidlo argues that the district court improperly weighed the evidence at the summary-judgment stage and that he had presented sufficient evidence to require a jury determination of his claims under Title VII (disparate treatment and hostile-work-environment), Colorado public policy, and breach of contract. After stating the applicable standard of review, we address each argument in turn.

### A.    Standard of Review

We review de novo a district court's grant of summary judgment. *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226 (10th Cir. 2014). And we view the evidence in the light most favorable to the nonmoving party, here Sidlo. *Id.*

Viewing the evidence this way, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670. Applying this standard to Sidlo's claims, we affirm the district court's grant of summary judgment in favor of MillerCoors.

### B.    Credibility Determinations

Sidlo argues that the district court erred in granting summary judgment, contending that "[t]he District Court's opinion is infused with cursory weighing of

9

the evidence, drawing of inference from the facts, and credibility assessments."

Appellant's Opening Br. at 16. Based on these alleged errors, he argues that we

should vacate the judgment and remand.

In support, Sidlo points to the district court's statement describing events as

"minor incidents . . . [in]sufficient to show that plaintiff's national origin was a

motivating factor in any of them, or even taking all of them together." Appellant's

App. at 299. Sidlo claims that the district court's characterization of the events as

"minor" constituted improper weighing. He also highlights the district court's

statement that "[i]n large part the plaintiff attempts to excuse and explain his conduct

in the incidents that were the bases for the termination that was upheld by the appeals

panel." *Id.* at 299. Sidlo argues that the word "excuses" is "charged" and indicates a

credibility determination. Oral Argument at 5:40–6:05, *Sidlo v. MillerCoors, LLC*,

No. 17-1000 (10th Cir. Nov. 15, 2017).

But this argument is unavailing. Rather than inappropriate weighing, the

district court engaged in appropriate evaluation of the evidence when it determined

that it was insufficient as a matter of law to support a claim for national-origin

discrimination. After the quoted comments, the district court noted that "[t]here has

been no showing that employees not in his protected group were treated differently or

that he had to endure an abusive working environment." Appellant's App. at 299.

Contrary to Sidlo's characterization, such conclusions are appropriate at the

summary-judgment stage.

10

At that stage, a reviewing court must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party, but it may grant summary judgment when the record taken as a whole couldn't lead a rational trier of fact to find for the non-moving party. *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). A court's proper role thus involves determining whether a jury could reasonably find that the plaintiff proved his case by the quality and quantity of the evidence. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254 (1986).[8] That's what happened here—the court found Sidlo's evidence lacking.

## C.      Title VII Claims

Under Title VII of the Civil Rights Act of 1964, it's unlawful to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Accompanying regulations define national-origin discrimination as "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1 (2017). Sidlo generally alleges "national

---

[8] Sidlo also argues that because the court's "underlying holdings and findings" were allegedly ambiguous, we should "vacate the summary judgment and remand for a statement of reasons." Appellant's Opening Br. at 16. We see no ambiguity with either the holdings or the findings.

origin discrimination and harassment." Appellant's Opening Br. at 21. But a worker facing discrimination has access to two claims for relief: hostile work environment and disparate treatment. So we address each possible claim in turn, despite Sidlo's using them interchangeably, and ask whether Sidlo has shown a dispute of material fact that would render summary judgment inappropriate.

### 1. Disparate Treatment

To prevail on a disparate-treatment Title VII claim, "a plaintiff must show that his employer intentionally discriminated against him for a reason prohibited by the statute." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005). We use a three-step analysis, which entails that (1) the employee establish a prima facie case of discrimination; (2) the employer show that it had a legitimate, nondiscriminatory reason for its action, and (3) the employee show that the employer's legitimate reasons are "mere pretext" for impermissible discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 798, 802 (1973); *accord Potter v. Synerlink Corp.*, 562 F. App'x 665, 673 (10th Cir. 2014) (unpublished).

A prima facie case of discrimination requires the plaintiff to show: (1) that he is a member of a protected class, (2) that he suffered an adverse employment action, and (3) that the adverse employment action took place under circumstances giving rise to an inference of discrimination. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Sidlo characterizes the initial denial of a new voucher for security

glasses and the failure to solve his computer-access issues as "adverse employment actions."[9] Presumably, he also disputes his final termination as an adverse action.

Yet even assuming that these actions qualify as "adverse employment actions," Sidlo has failed to show the requisite inference of discrimination. As the district court noted, Sidlo's factual allegations were "not sufficient to show that [his] national origin was a motivating factor in any of them, or even taking all of them together." Appellant's App. at 299. Sidlo points to one comment from his supervisor, Miller, that he would "not tolerate any foreigner bullshit." Appellant's Opening Br. at 6. But Sidlo doesn't connect that comment with any of the potential adverse actions. Under these meager facts, no reasonable jury could find discrimination, and as such, Sidlo has failed to establish a prima facie case even of discriminatory treatment—step one

---

[9] In the briefing, Sidlo conflates the disparate-treatment claim with the hostile-environment claim, arguing that "[i]n determining whether an actionable hostile work environment claim exists, we look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Appellant's Opening Br. at 24 (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). In this vein, he argues that "the incidents were a progression after the initial discipline on or about August 23, 2012" and mentions, in addition to the glasses and computer incidents, MillerCoors's characterization of his alleged use of a company vehicle, MillerCoors's conflating his acknowledgement of receiving disciplinary warning reports as an admission to the truth or validity of the same, that he didn't fail to follow procedures regarding the near miss, and that the pump out and vent header were intentionally mislabeled. Appellant's Opening Br. at 23–24.

13

of the test. And so summary judgment was appropriate for the disparate-treatment claim.[10]

### 2. Hostile Work Environment

But employers also violate Title VII if they permit a hostile work environment caused by national-origin discrimination. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012). A prima facie claim of hostile work environment requires the plaintiff to prove (1) that he belonged to a protected class, (2) that he suffered unwelcome harassment, (3) that the harassment was based on national origin, and (4) that the harassment was so severe or pervasive that it "altered a term, condition, or privilege of [his] employment and created an abusive working environment." *Lounds v. Lincare, Inc.*, 812 F.3d. 1208, 1222 (10th Cir. 2015) (quoting *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)); *see also Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (explaining that to avoid summary judgment a plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment

---

[10] Even if we were to move past step one, we would likely find legitimate nondiscriminatory reasons for MillerCoors's actions. MillerCoors granted Sidlo a second voucher for new glasses. His termination interrupted his computer access, but Miller worked with IT to resolve the computer concerns. And Sidlo's involvement in the near miss, his retaliation toward another MillerCoors employee, and the ammonia release resulted in his third, and final, termination. These events constitute legitimate reasons for termination. Sidlo's assertions to the contrary don't create a genuine dispute of material fact. *See Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.").

14

and create an abusive working environment") (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326–27 (10th Cir. 2004)).

This four-part claim can be broken down into two requirements: (1) evidence of harassment based on national origin and (2) evidence of severity or pervasiveness sufficient to create a hostile environment. *See Unal v. Los Alamos Pub. Sch.*, 638 F. App'x 729, 736–38 (10th Cir. 2016) (unpublished). We address each in turn.

No one disputes that Sidlo's Slovakian heritage puts him in a protected class. But Sidlo points to only one incident stemming from national-origin-based animus, Miller's statement that he would "not tolerate any foreigner bullshit." Appellant's Opening Br. at 6. This one comment may be enough to show harassment stemming from animus toward national origin, but it certainly fails the second prong of the test—severity or pervasiveness.

To determine whether the harassment is sufficiently severe and pervasive as to create a hostile environment, we consider various factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Lounds*, 812 F.3d at 1222 (quoting *Sprague v. Thorn Arms, Inc.*, 129 F.3d 1355, 1365 (10th Cir. 1997)). In demonstrating these factors, the plaintiff "must show more than a few isolated incidents" of enmity. *Id.* at 1223 (quoting *Wit v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998)). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.* at 1223 (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.

15

1994)). A plaintiff must prove both a subjective determination of hostility and that the environment was objectively hostile as viewed by "a reasonable employee under the same or similar circumstances." *Id.* at 1222.

The conduct Sidlo alleges fails to meet this standard. As we just discussed, Sidlo points to only one incident directly connected to national-origin discrimination. *See Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (noting that stray, isolated "comments fall far short of the 'steady barrage' required for a hostile environment claim"); *Heno v. Sprint/United Mgmt. Co.,* 208 F.3d 847, 856 (10th Cir. 2000) (advising that in considering whether a plaintiff has shown pervasive discrimination, "stray racial comments should typically not be admitted"). He doesn't directly tie his other objections—being initially denied a second voucher for safety glasses and having limited computer access—to national-origin discrimination. But even if these incidents were somehow tied to national-origin discrimination, the sum of the harassment didn't create an abusive working environment and therefore failed to satisfy the second prong of hostile-work-environment analysis. His allegations are a far cry from the required showing.

Sidlo also argues that the severity-and-pervasiveness evaluation is "generally not an appropriate matter to be considered on summary judgment[,]" presumably because of its fact-intensive nature. Appellant's Reply Br. at 5–6. But at least in Sidlo's case, summary judgment was appropriate because no reasonable jury could

16

conclude that the unwelcome harassment based on national origin alleged by Sidlo was sufficiently pervasive to alter a term, condition, or privilege of his employment.[11]

## D.    Wrongful Discharge in Violation of Colorado Public Policy

Sidlo argues that MillerCoors wrongfully discharged him in violation of Colorado's public-policy exception to at-will employment. *See Martin Marietta Corporation v. Lorenz*, 823 P.2d 100, 108 (Colo. 1992). A prima facie case requires the plaintiff to show:

> (1) that the employer directed the employee to perform an illegal act as part of the employee's work-related duties or prohibited the employee from performing a public duty or exercising an important job-related right or privilege;
> (2) that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee's basic responsibility as a citizen or the employee's right or privilege as a worker; and
> (3) that the employee was terminated as the result of refusing to perform the act directed by the employer.

*Id.* at 109.

Sidlo doesn't allege that he refused to perform an illegal act. Nor does he point to any specific statute MillerCoors asked him to violate. So, to state a claim, he needs to show a "clearly expressed public policy" that he was asked to violate.

_____

[11] Sidlo also contests the credibility of the testimony of MillerCoors's safety manager on the grounds that it was "second-hand." Appellant's Opening Br. at 10, 21. But her testimony's second-hand nature doesn't impair her credibility. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1146–47 (10th Cir. 2007) (discussing the "common scenario" of corporations designating individuals who lack personal knowledge of the litigation as Rule 30(b)(6) deponents).

"[T]he public policy exception to the at-will employment doctrine is not subject to precise definition, yet is grounded in the notion that an employer should be prohibited from discharging an employee with impunity for reasons that contravene widely accepted and substantial public policies." *Kearl v. Portage Envtl., Inc.*, 205 P.3d 496, 498 (Colo. App. 2008). The plaintiff must allege that the "public policy invoked 'truly impacts the public in order to justify interference into an employer's business decisions.'" *Id.* at 499 (quoting *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 552 (Colo. 1997)).

Sidlo therefore argues that he brought to the attention of his superiors various safety violations in the workplace, including Lopez's violation, and that Colorado law "protects whistleblowers." Appellant's Opening Br. at 27–28. But Sidlo fails to provide a "widely accepted and substantial public polic[y]" that he was fired for upholding. *Kearl*, 205 P.3d at 498. And he fails to explain how his complaints implicate an issue that "affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer, leads to an outrageous result clearly inconsistent with a stated public policy, or strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Crawford Rehab. Servs., Inc.*, 938 P.2d at 552 (alteration in original) (internal quotation marks and citations omitted); *see also id.* at 553 ("Not all potential sources of public policy are of sufficient gravity to outweigh the precepts of at-will employment. We must develop the common law in this area with care.").

Sidlo's generic allegations fail to establish connection to a "clear mandate of public policy," *Martin Marietta Corp*, 823 P.2d at 107, and correspondingly don't establish a prima facie case that his termination falls under the public-policy exception. So, summary judgment was appropriate.

## E.  Breach of Implied Contract

Sidlo also argues that MillerCoors should have provided a pre-appeal meeting. And he argues that because he had a right to such a meeting under an implied-contract theory, summary judgment was inappropriate.

Under Colorado law, all employees hired for indefinite time periods are "at will." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). An at-will relationship allows either party to terminate the employment at any time. *Id.* But a breach-of-an-implied-contract theory rebuts the presumption of at-will status. An employee establishes breach of an implied contract if he can demonstrate that "the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Id.* The employee must also show that his continued employment constituted acceptance of and consideration for the contracted procedures. *Id.*

But an employer's disclaimer of contractual obligations is effective "if the employer has clearly and conspicuously disclaimed intent to enter into a contract limiting the right to discharge employees." *George v. Ute Water Conservancy Dist.*,

950 P.2d 1195, 1198 (Colo. App. 1997). Colorado courts weigh whether a disclaimer

is clear by considering:

>(1) whether the policy is labeled;
>(2) whether the disclaimer appears on the first page of the policy;
>(3) if the policy is signed by the employee;
>(4) where the disclaimer appears;
>(5) whether the disclaimer references "at-will" employment; and
>(6) the proximity of the disclaimer to the termination guidelines.

*Winkler v. Bowlmor AMF*, 207 F. Supp. 3d 1185, 1190 (D. Colo. 2016).

MillerCoors explicitly disclaimed any contractual obligations. The

Supplemental Policy that Sidlo relies on states, in bolded text:

> Nothing in this policy may be construed as modifying the At-Will Employment policy, which is incorporated in full by reference. As with all MillerCoors policies and practices, this policy: a) is subject to interpretation, change or elimination, in management's discretion, at any time, with or without prior notice; and b) does not create contractual rights or alter an employee's at-will status.

Appellant's App. at 229.

Such a conspicuous and unambiguous disclaimer refutes any implied contract

obligations, suggesting that Sidlo was an at-will employee.

But even if Sidlo wasn't at will, he would be hard pressed to show an implied

contract right to the pre-appeal meeting specifically. The Supplemental Policy

doesn't mention a pre-appeal meeting. Yes, the appeal process typically includes

such a meeting, but nothing in MillerCoors's policies suggests it's integral or

mandatory. And Sidlo provided no evidence that the employment bargain included a

pre-appeal meeting. *See Keenan*, 731 P.2d at 711.

20

The district court also determined that Sidlo hadn't produced any evidence about how the lack of a pre-appeal meeting prejudiced his appeal. And that trend has continued before this court.[12] Given the overwhelming evidence supporting his termination (primarily his involvement in two recent serious mistakes), a strategy change is unlikely to have affected the outcome. Sidlo failed to show an implied-contract claim, and so summary judgment was appropriate.

## CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of MillerCoors.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[12] On appeal, Sidlo points to the fact that English is his second language and, allegedly, "[a] pre-appeal hearing was essential for Mr. Sidlo to fully understand the process and present his appeal." Appellant's Opening Br. at 29. However, Sidlo didn't make this argument at the district court. And so it's waived. Sidlo argues that "[i]t is quite evident from the pleadings that a key component to this case is Mr. Sidlo's national origin and that he speaks English with a noticeable Eastern European accent." Appellant's Reply Br. at 10 (internal quotation marks omitted). This we-implied-it argument fails to avoid waiver. And regardless, Sidlo fails to specify how his appeal presentation would have differed with a pre-appeal meeting even accounting for his language skills.