Peter KEARL, Plaintiff–Appellant,

v.

PORTAGE ENVIRONMENTAL, INC., an Idaho company, Defendant–Appellee.

No. 07CA2527.

Colorado Court of Appeals,
Div. I.

Dec. 24, 2008.

Rehearing Denied Feb. 12, 2009.

King & Greisen, LLP, Diane S. King, Denver, Colorado, for Plaintiff–Appellant.

Bechtel & Santo, LLP, Michael C. Santo, James C. Colling, Grand Junction, Colorado, for Defendant–Appellee.

Opinion by Judge LICHTENSTEIN.

Plaintiff, Peter Kearl, appeals the judgment dismissing his claim for wrongful discharge under the public policy exception to an employer's right to fire an at-will employee. We reverse and remand with directions.

## I. Background

As this appeal challenges the trial court's dismissal on grounds of failure to state a claim, the following summary of facts is drawn solely from Kearl's complaint and attached exhibits.

Kearl worked for defendant, Portage Environmental, Inc. (Portage), for approximately seven years, from October 1998 until his termination on or about April 26, 2006. During Kearl's employment, Portage secured a contract with the U.S. Department of Energy to provide remediation services at a uranium enrichment plant in Paducah, Kentucky.

Kearl worked on the Paducah project extensively, performing, among other things, scientific analysis regarding the effectiveness of a cleanup technology called "six-phase heating." As part of research efforts conducted approximately ten years earlier, Kearl had concluded that six-phase heating was a flawed technology, and actually allowed toxic substances to spread into groundwater at an increased rate rather than rise to the surface for collection.

Kearl's analysis of field testing data regarding the effectiveness of remediation efforts at the Paducah site indicated that six-phase heating had removed 1% of the subject contamination. Kearl shared his conclusions and criticisms of six-phase heating with the Department of Energy's technical advisory committee. The committee included Kearl's criticisms in its analysis "at the drafting stage."

At some point, a final report was prepared by another contractor indicating that the field testing of six-phase heating had removed 99.1 % of the subject contamination. Kearl's criticisms of six-phase heating were not included in the final report. After issuance of the final report, Kearl sent e-mails to his superiors explaining his objections to the use of six-phase heating on the Paducah project and to the results claimed in the final report.

Kearl grew increasingly concerned that a failure of six-phase heating in field testing was being covered up, and that if the technology were fully implemented it would increase the risk to public safety.

On or about April 25, 2006, Kearl sent an e-mail to his superiors, again raising his concerns and questioning management's failure to ensure the incorporation of sound technical advice into the final remediation plan.

On or about April 26, 2006, Kearl found a copy of his e-mail taped to his office door with a handwritten note: "Pete NO JOKE YOUR [sic] FIRED DAVE."

Kearl filed his complaint and jury demand on August 7, 2007. On October 1, 2007, Portage filed a motion to dismiss for failure to state a claim pursuant to C.R.C.P. 12(b)(5). On October 19, Kearl filed a response to Portage's motion. After a reply from Portage, the district court granted the motion on November 6, 2007.

Kearl filed a timely motion for reconsideration under C.R.C.P. 59(a) on November 16, 2007 and a motion for relief from judgment under C.R.C.P. 60(b) on December 14, 2007. The district court did not rule on either of Kearl's motions.

Kearl filed a notice of appeal on December 21, 2007. In an order dated January 17, 2008, this court stated that Kearl's motion for reconsideration had been deemed denied by operation of law. No court has ruled on the motion for relief from judgment, but it is not a subject of this appeal.

## II. Standard of Review

### A.

We review de novo a trial court's grant of a motion to dismiss for failure to state a claim. *Hall v. Frankel,* 190 P.3d 852, 864 (Colo.App.2008). Our function when reviewing a C.R.C.P. 12(b)(5) motion is to assess whether the complaint is legally sufficient to state a claim for which relief may be granted. *See Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir.2002).

We confine our review to the four corners of the complaint and any exhibits attached thereto, accepting as true all material facts alleged by the plaintiff and drawing all inferences in the plaintiff's favor. *Kreft v. Adolph Coors Co.,* 170 P.3d 854, 857 (Colo. App.2007); *see also* C.R.C.P. 10(c); *Stauffer v. Stegemann,* 165 P.3d 713, 716 (Colo.App.

2006) (an exhibit to a pleading is a part thereof for all purposes).

A complaint need not express all facts that support the claim; it need only serve notice of the claim asserted. C.R.C.P. 8(a); *Adams v. Corr. Corp.,* 187 P.3d 1190, 1198 (Colo.App.2008). We look upon C.R.C.P. 12(b)(5) motions with disfavor, and will not affirm dismissal of a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove facts in support of a claim that would entitle the plaintiff to relief. *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 665 (Colo.1999) *(Floyd ).*

### B.

Our supreme court has stated that the public policy exception to the at-will employment doctrine is not subject to precise definition, yet is grounded in the notion that an employer should be prohibited from discharging an employee with impunity for reasons that contravene widely accepted and substantial public policies. *Crawford Rehab. Servs., Inc. v. Weissman,* 938 P.2d at 540, 552 (Colo.1997) *(Weissman ).* The identification of a sufficiently clear expression of public policy is an issue of law for the court. *Jaynes v. Centura Health Corp.,* 148 P.3d 241, 244 (Colo.App.2006).

In *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992) *(Lorenz ),* our supreme court held that employees terminated for refusing to engage in unlawful or unethical conduct could state a cognizable claim for wrongful discharge. *See Weissman,* 938 P.2d at 552.

In *Weissman,* our supreme court recognized that in certain circumstances, an employee terminated in retaliation for exercising a job-related right could also state a cognizable claim for wrongful discharge. *Id.* In addition, the *Weissman* court reiterated the public's interest in prohibiting employers from placing employees in the untenable position of keeping a job only by forsaking a public duty. *Id.* at 551.

As pertinent here, the public policy exception allows at-will employees to pursue claims for wrongful discharge if they allege that they were discharged because they en-

gaged in conduct that is protected or encouraged as a matter of public policy. *Floyd,* 978 P.2d at 666–67.

■ Thus, a plaintiff may state a claim for retaliatory discharge in violation of public policy by alleging that he or she was employed by the defendant; that the defendant discharged him or her; and that the defendant discharged him or her in retaliation for exercising a job-related right or performing a specific statutory duty, or that the termination would undermine a clearly expressed public policy. *See Lorenz,* 823 P.2d at 109; *Lathrop v. Entenmann's, Inc.,* 770 P.2d 1367, 1373 (Colo.App.1989); *see generally* CJI–Civ. 31:12 (2008) (illustrating the legal principle in *Lathrop* ).

■ A plaintiff asserting a claim for wrongful discharge in violation of public policy must also allege that the public policy invoked "truly impacts the public in order to justify interference into an employer's business decisions." *Weissman,* 938 P.2d at 552 (quoting *Rocky Mountain Hosp. & Med. Serv. v. Mariani,* 916 P.2d 519, 525 (Colo. 1996) (*Mariani* )).

In the present case, Kearl is alleging wrongful discharge in retaliation for his urging Portage to desist from participating in a potential fraud on the government and public, or what might otherwise be known as "whistleblowing." *See Flores v. Am. Pharm. Servs., Inc.,* 994 P.2d 455, 459 (Colo.App. 1999) (fact that employee reported co-worker's alleged insurance fraud to employer rather than outside agency was not fatal to claim of wrongful discharge in violation of public policy).

### III. Sufficiency of the Complaint

Kearl contends the district court erred when it dismissed his complaint for failure to state a claim of wrongful discharge in violation of public policy. Kearl argues the district court reviewed his complaint under a heightened pleading standard not prescribed by C.R.C.P. 8(a) and asserts that his complaint was sufficient to put Portage on notice of his claim. We agree.

We conclude the district court erred in basing its dismissal on Kearl's failure to identify a specific legislative, judicial, or administrative source of public policy, and Kearl's failure to plead the "required scienter element that [Portage] knew or should have known, that [Kearl] reasonably believed that he was acting in furtherance of a legally cognizable public duty."

### A.

■ Kearl's complaint alleges he was terminated for his "ongoing complaints" which were "consistent with his professional duties as a scientist and academician" and concerned "what he in good faith believed to be a fraud on the government" at the price of public health. Our review of authority from Colorado and other states leads us to conclude that this allegation was sufficient to put Portage on notice of the widely accepted public policy underlying Kearl's claim.

The Colorado Supreme Court made clear in *Lorenz* that "[t]here is no question that the manifest public policy of this state is that neither an employer nor an employee should be permitted to knowingly perpetrate a fraud or deception on the federal or state government." *Lorenz,* 823 P.2d at 109. Here, it is alleged that Portage had a contract with the federal Department of Energy.

Colorado is in line with a number of other jurisdictions that shield whistleblowers from retaliatory discharge. *See, e.g., Colores v. Bd. of Trs.,* 105 Cal.App.4th 1293, 130 Cal. Rptr.2d 347, 352 n. 1 (2003) ("Fundamental public policy prohibits the retaliatory discharge of employees for whistle blowing in the public interest."); *Lanning v. Morris Mobile Meals, Inc.,* 308 Ill.App.3d 490, 242 Ill.Dec. 173, 720 N.E.2d 1128, 1129 (1999) ("A claim of retaliatory discharge is permissible where 'an employee is discharged in retaliation for the reporting of illegal or improper conduct,' also known as 'whistle blowing.' " (quoting *Jacobson v. Knepper & Moga, P.C.,* 185 Ill.2d 372, 235 Ill.Dec. 936, 706 N.E.2d 491, 493 (1998))); *Moyer v. Allen Freight Lines, Inc.,* 20 Kan.App.2d 203, 885 P.2d 391, 393 (1994) ( "[T]ermination of an employee in retaliation for the good faith reporting of a serious infraction of . . . rules, regulations, or the law by a co-worker or an employer to

either company management or law enforcement officials (whistle-blowing) is an actionable tort." (quoting *Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685, 689–90 (1988))); *Drury v. Mo. Youth Soccer Ass'n,* 259 S.W.3d 558, 566 (Mo.Ct.App.2008) (at-will employee has claim for wrongful discharge if discharged for reporting employer wrongdoing to superiors or for acting in manner public policy would encourage); *Barker v. State Ins. Fund,* 40 P.3d 463, 468 (Okla.2001) ("Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge.").

▓▓▓ Based on our supreme court's statement in *Lorenz,* we conclude that Colorado has a clearly expressed public policy against terminating an employee in retaliation for the employee's good faith attempt to prevent the employer's participation in defrauding the government. We express no opinion about whether any fraud occurred or would have occurred absent Kearl's complaints. We only conclude that Kearl's allegations were sufficient to put Portage on notice of the "clearly expressed public policy" element of his claim for wrongful discharge. As such, it was error for the district court to grant Portage's motion to dismiss on this ground.

### B.

▓▓▓ We next conclude the district court erred in basing its dismissal on Kearl's failure to plead the "required scienter element that [Portage] knew or should have known, that [Kearl] reasonably believed that he was acting in furtherance of a legally cognizable public duty."

The crux of Kearl's complaint appears to be that Portage acquiesced in recommending six-phase heating as a sound remediation technology when Kearl's evidence showed that it was not. Kearl alleged that he complained to his superiors about what he considered to be a fraud on the government at the price of public health: that Portage's management and the DOE were ignoring the facts, and moving forward to support the failed technology. He told his superiors,

"This story would be a great *60 Minutes* segment." By alleging that he expressed these concerns to his superiors and alleging that he "complained about what he in good faith believed to be a fraud on the government," Kearl has sufficiently alleged that Portage knew or should have known that he reasonably believed he was acting in furtherance of a legally cognizable public duty. *See Mariani,* 916 P.2d at 528 n. 12 (the objections Mariani voiced about the practices to her supervisors satisfied the *Lorenz* requirement that the employer was aware or should have been aware of the reason for her refusal to falsify accounting information).

For the foregoing reasons, we conclude Kearl's allegations were sufficient to put Portage on notice of the scienter element of his claim for wrongful termination. As such, it was error for the district court to grant Portage's motion to dismiss on this ground as well.

### IV. Request to Amend

Kearl next contends the district court erred by dismissing his complaint without first affording him an opportunity to amend his complaint. Based on our conclusion that Kearl's complaint was sufficient to withstand Portage's motion to dismiss, we do not reach this contention.

### V. Conclusion

For the reasons stated, Kearl's complaint was sufficient to withstand a motion to dismiss for failure to state a claim.

Therefore the judgment is reversed, and the case is remanded with directions to reinstate Kearl's complaint.

Judge RICHMAN and Judge MÁRQUEZ * concur.

---

* Sitting by assignment of the Chief Justice under    provisions of Colo. Const. art. VI, § 5(3), and