20CA2116 Castillo v Denver Health 01-06-2022 COLORADO COURT OF APPEALS Court of Appeals No. 20CA2116 City and County of Denver District Court No. 20CV91 Honorable Andrew P. McCallin, Judge TinaMarie Castillo, RN, Plaintiff-Appellant, v. Denver Health and Hospital Authority, Defendant-Appellee. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division A Opinion by JUDGE LIPINSKY Fox and Freyre, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 6, 2022 Law Office of John B. Roesler, John B. Roesler, Denver, Colorado, for Plaintiff-Appellant Lewis Brisbois Bisgaard & Smith LLP, Alice Conway Powers, Denver, Colorado, for Defendant-Appellee 
1 ¶ 1 TinaMarie Castillo appeals the district court’s dismissal of her claims against Denver Health and Hospital Authority (Denver Health) for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1). We reverse and remand for further proceedings. I. Background Facts and Procedural History ¶ 2 Denver Health employed Castillo as its Senior RN Clinical Risk Manager. In that role, Castillo was “responsible for the clinical review and analysis of significant occurrences as related to risk management, quality, and patient safety” at Denver Health. ¶ 3 Denver Health used the term “sentinel event” to refer to “the injury or death of a patient during medical treatment.” Denver Health was required to report all sentinel events to the Colorado Department of Public Health and Environment (CDPHE) and to The Joint Commission, “a national independent not-for-profit healthcare accrediting body.” ¶ 4 Denver Health tasked Castillo with, among other responsibilities, “gathering all the facts for the root cause analysis [of a sentinel event] and putting together an emergency meeting” where “all persons who were involved in the sentinel event” 
2 determine what “prospective changes are necessary to make sure that such a sentinel event never happens again.” ¶ 5 Denver Health conducted such an emergency meeting following a sentinel event in its OB/GYN department involving the death of an infant. Castillo alleged that, at the meeting, the director of Denver Health’s OB/GYN department “minimize[d] the . . . sentinel event” by “refus[ing] to acknowledge that the sentinel event had occurred because there had been a significant deviation from the [s]tandard of [c]are involving failure to properly monitor vital signs of the fetus.” ¶ 6 Castillo reported her “ethical and compliance concerns” about the director’s behavior to Denver Health’s general counsel and then, as the general counsel instructed, to Denver Health’s chief quality officer. Hours after reporting those concerns to Denver Health’s chief quality officer, Castillo’s supervisor removed Castillo from her position and placed her on unpaid administrative leave. Castillo’s supervisor told Castillo that she had two weeks to resign or find another position at Denver Health. Denver Health terminated Castillo’s employment twelve days later on the grounds that she 
3 had allegedly deleted all her computer files in violation of Denver Health’s record-keeping policy. ¶ 7 Castillo brought claims against Denver Health for breach of implied contract, breach of the covenant of good faith and fair dealing, and promissory estoppel. In her complaint, Castillo contended that Denver Health terminated her employment because she had reported her ethical and compliance concerns regarding the behavior of the director of the OB/GYN department. Castillo asserted that Denver Health required its employees to report such concerns and adopted policies (Denver Health’s policies) to protect its employees from retaliation for making such reports. ¶ 8 Denver Health moved to dismiss Castillo’s claims, asserting that the district court lacked subject matter jurisdiction to hear them under the Colorado Governmental Immunity Act (the Act), §§ 24-10-101 to -120, C.R.S. 2021, because they “lie in tort or could lie in tort,” § 24-10-106(1), C.R.S. 2021. Denver Health noted that, as a public entity, it was immune from liability for tort claims, “regardless of whether [they] may be the type of action[s] or the form of relief chosen by the claimant,” except as otherwise provided in the Act. 
4 ¶ 9 Further, Denver Health argued that Castillo’s claims failed because she had not complied with “the jurisdictional perquisite [sic] of filing a notice of claim including written notice as required by [section 24-10-109(1), C.R.S. 2021].” Section 24-10-109 imposes a reporting requirement on “[a]ny person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment.” § 24-10-109. Compliance with the statute is a condition precedent to bringing a tort claim against the public entity. Sussman v. Univ. of Colo. Health Scis. Ctr., 706 P.2d 443, 445 (Colo. App. 1985). Section 24-10-109 does not apply to claims for breach of contract. Ebke v. Julesburg Sch. Dist. No. RE-1, 37 Colo. App. 349, 351, 550 P.2d 355, 358 (1976), aff’d, 193 Colo. 40, 562 P.2d 419 (1977). ¶ 10 Denver Health specifically asserted that Castillo’s claims “qualify for the public policy exception[] to the at-will employment doctrine” because she alleged that she suffered retaliation “for whistleblowing about ethical and compliance concerns at a hospital.” As explained below, claims arising from retaliation for whistleblowing lie in tort. Denver Health argued that Castillo’s 
5 claims were subject to dismissal because they were effectively tort claims that are barred under the Act. ¶ 11 Castillo responded that she was not a “whistleblower” for purposes of Colorado’s State Employee Protection Act (SEPA), §§ 24-50.5-101 to -107, C.R.S. 2021, and that no other viable public policy exception was available to her. Because Denver Health “did not direct [her] to perform an illegal act[,] . . . prohibit [her] from performing a public duty[,] . . . or [prohibit her] from exercising an important job-related right or privilege,” Castillo contended that her claims did not satisfy the first element of a claim for wrongful discharge in violation of public policy — refusal to participate in illegal activity. See Martin Marietta Corp. v. Lorenz, 823 P.2d 100, 107 (Colo. 1992) (identifying the elements that an at-
will employee must plead to establish a prima facie case for wrongful discharge under the public policy exception). Thus, she asserted that she was not required to file a notice of claim under section 24-10-109(1) because her claims lay “solely in contract.” ¶ 12 In its reply in support of its dismissal motion, Denver Health said that Castillo had a duty to report ethical and compliance concerns that arose independently from Denver Health’s policies. 
6 In addition, Denver Health argued that “[t]he rule-based right related to public health allegedly exercised by [Castillo] was the right to report ethical and compliance concerns based on [Denver Health’s policies].” ¶ 13 The district court granted Denver Health’s motion, concluding that “[a] termination based on exercising a job-related right associated with public health, such as reporting compliance concerns in accordance with [Denver Health’s] policies, is sufficient to allege[] a claim for wrongful discharge in violation of public policy.” The court said that, regardless of how Castillo characterized her claims, she had alleged a breach of “tort duties” and, therefore, “this action could lie in tort.” For this reason, the court held that Denver Health “can claim immunity under the [Act].” II. Analysis ¶ 14 The principal issue in this appeal is whether, as a matter of law, Castillo’s claims could lie in tort. If so, the district court correctly dismissed her claims. If not, the district court’s judgment must be reversed. 
7 ¶ 15 Castillo asserts that the district court erred by granting Denver Health’s motion to dismiss because she could not have brought claims for wrongful discharge in violation of public policy. According to Castillo, the district court misapplied the law by conflating two concepts. She argues that, under Colorado case law, an employer’s curtailment of a “job-related right” supports an employee’s claim for wrongful discharge in violation of public policy. Castillo says that Denver Health did not curtail any of her “job-
related rights.” Rather, she contends that her claims were contractual because they arose from the exercise of her “job-related responsibilities and duties.” ¶ 16 So, the outcome of this case hinges on whether, as Denver Health argues, Castillo alleged that Denver Health retaliated against her for exercising a “job-related right” to “blow the whistle” based on a duty external to Denver Health’s policies, or whether, as Castillo asserts, Denver Health terminated her employment because she exercised “job-related responsibilities and duties.” ¶ 17 Denver Health responds that the district court did not err in analyzing the public policy exception to the at-will employment doctrine and that Castillo’s arguments on appeal are frivolous. 
8 Denver Health requests an award of its appellate attorney fees under C.A.R. 38. ¶ 18 We hold that the district court erred by dismissing Castillo’s claims because she did not plead facts that would support a claim for wrongful discharge in violation of public policy. Accordingly, we remand the case to the district court for further proceedings consistent with this opinion and deny Denver Health’s request for an award of appellate attorney fees. A. Preservation ¶ 19 Before turning to the merits of Castillo’s argument regarding the nature of her claims, we must determine whether Castillo preserved it. See Rinker v. Colina-Lee, 2019 COA 45, ¶ 22, 452 P.3d 161, 167 (“We do not review issues that have been insufficiently preserved.”). ¶ 20 According to Denver Health, Castillo failed to assert in her response to its motion to dismiss, as she does now, that Denver Health did not terminate her employment for exercising a “job-
related right.” Instead, Denver Health contends that Castillo argued in her response that she did not satisfy the first element of a claim for wrongful discharge in violation of public policy for the sole 
9 reason that Denver Health did not direct her to perform an illegal act. ¶ 21 While Castillo indeed raised this argument in her response to Denver Health’s dismissal motion, she also asserted that she could not have brought a claim for wrongful discharge in violation of public policy because Denver Health did not “prohibit [her] from performing a public duty or from exercising an important job-
related right or privilege.” (Citations omitted.) Castillo presented these assertions under a heading entitled “No Viable Public Policy Exception was Available to [Castillo].” ¶ 22 Although, in her response, Castillo did not specifically discuss what constitutes a “job-related right” for purposes of the public policy exception to the at-will employment doctrine, she had no reason to do so because Denver Health did not argue in its dismissal motion that she could have premised a claim for wrongful discharge in violation of public policy on her exercise of a “job-
related right.” Denver Health raised this argument for the first time in its reply brief in support of the dismissal motion. ¶ 23 Moreover, given our holding below that Castillo did not exercise a “job-related right” by reporting her compliance concerns 
10 to Denver Health, infra Part II.E.1, Castillo had no reason to raise an argument in her response to Denver Health’s motion premised on her exercise of a “job-related right” and explain why it could not have supported a tort claim for wrongful discharge. ¶ 24 Finally, the district court addressed Denver Health’s “job-
related right” argument, holding that Castillo pleaded facts that would support a claim for wrongful termination in violation of public policy because she “exercis[ed] a job-related right associated with public health.” Although, in responding to the motion to dismiss, Castillo did not explain with any specificity what constitutes a “job-related right,” we conclude that Castillo sufficiently preserved her assertion that she did not plead facts that could have supported a claim for wrongful discharge in violation of public policy and, specifically, that she did not exercise a “job-
related right” when she reported her ethical and compliance concerns to Denver Health. See In re Estate of Owens, 2017 COA 53, ¶ 21, 413 P.3d 255, 261-62 (“Where an issue was brought to the district court’s attention and the court ruled on it, it is preserved for appellate review; no talismanic language is required to preserve an issue.”). 
11 B. Standard of Review ¶ 25 “Whether a claim falls within an exception to the [Act’s] waiver of sovereign immunity is a question of subject matter jurisdiction and, if raised before trial, it appropriately is addressed under C.R.C.P. 12(b)(1).” Fogg v. Macaluso, 892 P.2d 271, 277 (Colo. 1995). “[W]here a plaintiff has sued a governmental entity and that entity interposes a motion to dismiss for lack of jurisdiction, the plaintiff has the burden of demonstrating that governmental immunity has been waived.” Tidwell v. City & Cnty. of Denver, 83 P.3d 75, 85 (Colo. 2003). ¶ 26 “[W]here, as here, the relevant facts are undisputed, the issue of governmental immunity is one of law, and the district court may rule on the jurisdictional issue without a hearing.” Foster v. Bd. of Governors of the Colo. State Univ. Sys., 2014 COA 18, ¶ 10, 342 P.3d 497, 500. In such circumstances, we review the district court’s jurisdictional ruling de novo. Tidwell, 83 P.3d at 81; see Robinson v. Colo. State Lottery Div., 179 P.3d 998, 1003 (Colo. 2008) (“We review the issue of whether [the plaintiff’s] claims are barred by the [Act] de novo because [they] concern[] a matter of statutory construction.”). 
12 C. Immunity Under the Act ¶ 27 The Act provides that “[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant.” § 24-10-106(1); see § 24-10-108, C.R.S. 2021 (same). While the Act does not bar claims that lie solely in contract, it bars “claims that could arise in both tort and contract.” Robinson, 179 P.3d at 1004. ¶ 28 Under the Act, “the form of the complaint is not determinative of the claim’s basis in tort or contract.” Id. at 1003. “Instead, we consider both the nature of the injury and the relief sought.” Elder v. Williams, 2020 CO 88, ¶ 21, 477 P.3d 694, 698. “Although the nature of the relief requested is not dispositive on the question of whether a claim lies in tort, the relief requested informs our understanding of the nature of the injury and the duty allegedly breached.” Robinson, 179 P.3d at 1003. D. Wrongful Discharge in Violation of Public Policy ¶ 29 “In general, employment contracts are at-will and either the employer or the employee may terminate the relationship at any time” without incurring legal liability. Rocky Mountain Hosp. & 
13 Med. Serv. v. Mariani, 916 P.2d 519, 523 (Colo. 1996). However, the supreme court has “recognized an exception to this general rule in situations where the employer terminated the employment contract in violation of public policy.” Id.; see Lorenz, 823 P.2d at 108 (“[A] cause of action under the public-policy exception to the at-will employment doctrine in cognizable in the State of Colorado.”). ¶ 30 The public policy exception generally allows “at-will employees to pursue claims for wrongful discharge if they allege that they were discharged because they either (1) refused to engage in conduct that would violate public policy, or (2) engaged in conduct that is protected or encouraged as a matter of public policy.” Coors Brewing Co. v. Floyd, 978 P.2d 663, 666-67 (Colo. 1999). Claims for wrongful discharge lie in tort. See Lorenz, 823 P.2d at 113. Claims for wrongful discharge under the public-policy exception have included termination of employees for: (1) refusal to participate in illegal activity, (2) the employee’s refusal to forsake the performance of an important public duty or obligation, (3) the employee’s refusal to forego the exercise of a job-related legal right or privilege, (4) the employee’s “whistleblowing” activity or other conduct exposing the employer’s wrongdoing, and (5) the employee’s performance of an act that public policy would encourage under circumstances where retaliatory discharge is 
14 supported by evidence of [the] employer’s bad faith, malice, or retaliation. Id. at 107 (citations omitted). ¶ 31 “The essence of the public-policy exception is that an employee will have a cognizable claim for wrongful discharge ‘if the discharge of the employee contravenes a clear mandate of public policy.’” Id. (quoting Thompson v. St. Regis Paper Co., 685 P.2d 1081, 1089 (Wash. 1984)). Although “public-policy wrongful discharge is not subject to precise definition,” Crawford Rehab. Servs., Inc. v. Weissman, 938 P.2d 540, 552 (Colo. 1997), [a] common requirement in cases discussing the issue is that [the] public policy must concern behavior that truly impacts the public in order to justify interference into an employer’s business decisions. In addition, [the] public policy must be clearly mandated such that the acceptable behavior is concrete and discernible as opposed to a broad hortatory statement of policy that gives little direction as to the bounds of proper behavior. Mariani, 916 P.2d at 525. E. Discussion ¶ 32 Because Denver Health is a “public entity” for purposes of the Act, see § 24-10-103(5), C.R.S. 2021 (“‘Public entity’ means . . . any county, city and county, . . . or political subdivision thereof 
15 organized pursuant to law . . . .”); § 25-29-103(1), C.R.S. 2021 (“There is hereby created [Denver Health], which shall be a body corporate and a political subdivision of the state . . . .”), and because Castillo did not provide notice of her claims under section 24-10-109(1), Castillo concedes that the Act bars her from bringing claims against Denver Health that either “lie in tort or could lie in tort,” § 24-10-106(1). Thus, because a claim for wrongful discharge in violation of public policy lies in tort, see Lorenz, 823 P.2d at 113, our analysis focuses on whether Castillo pleaded facts that would support a tort claim. If Castillo’s claims neither lie in tort nor could lie in tort, the Act does not bar them. ¶ 33 In Lorenz, the supreme court listed five expressions of public policy that appellate courts across the country have held give rise to cognizable claims for wrongful discharge in violation of public policy. Id. at 107. The district court found that the third expression of public policy was applicable to this case — Castillo’s “refusal to forego the exercise of a job-related legal right or privilege,” id. — and, consequently, held that Castillo could have brought a tort claim for wrongful discharge in violation of public policy. 
16 ¶ 34 Although we disagree with the district court’s reasoning, as we explain further infra Part II.E.1, such determination does not end our analysis. Because “[t]he identification of a sufficiently clear expression of public policy is an issue of law for the court,” Kearl v. Portage Env’t, Inc., 205 P.3d 496, 498 (Colo. App. 2008), and because the parties do not dispute the facts surrounding Castillo’s termination, we must also consider whether Castillo pleaded facts that implicate any other expression of public policy that would support a claim for wrongful discharge in violation of public policy, see Tidwell, 83 P.3d at 81 (holding that we review a district court’s jurisdictional ruling de novo when there is no evidentiary dispute). Based on the facts Castillo pleaded, the parties’ arguments in the district court and in this court, and the district court’s reliance on the holding in Kearl, two additional expressions of public policy could potentially support such a claim: (1) Castillo’s “refusal to forsake the performance of an important public duty or obligation” and (2) her “‘whistleblowing’ activity or other conduct exposing [Denver Health]’s wrongdoing.” Lorenz, 823 P.2d at 107. We consider these expressions of public policy after addressing whether 
17 Castillo exercised a “job-related right” by reporting her compliance concerns. 1. The District Court Erred by Holding that Castillo Exercised a “Job-Related Right” by Reporting Her Compliance Concerns ¶ 35 We agree with Castillo that the district court erred by conflating the concept of a “job-related right” with “job-related responsibilities and duties.” ¶ 36 After holding that “a cause of action under the public-policy exception to the at-will employment doctrine is cognizable in the State of Colorado,” Lorenz, 823 P.2d at 108, the supreme court explained that it “kn[ew] of no reason why the public-policy exception should not apply to the discharge of an employee . . . because of . . . the employee’s exercise of a statutory right or privilege granted to workers,” id. at 109 (emphasis added). The court cited to Lathrop v. Entenmann’s, Inc., 770 P.2d 1367 (Colo. App. 1989), and Frampton v. Central Indiana Gas Co., 297 N.E.2d 425 (Ind. 1973), to support the latter statement. See Lorenz, 823 P.2d at 109. ¶ 37 Lathrop and Frampton recognized a cognizable claim for wrongful discharge in violation of public policy after the employer 
18 terminated the employee for filing a workers’ compensation claim. See Lathrop, 770 P.2d at 1373 (“[S]ince an employee is granted the specific right to apply for and receive compensation under the Act, an employer’s retaliation against such an employee for his exercise of such right violates Colorado’s public policy.”); Frampton, 297 N.E.2d at 428 (“[U]nder ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized.”). ¶ 38 Since Lorenz, the Colorado appellate courts have acknowledged only a limited number of “job-related rights” that can support a claim for wrongful discharge in violation of public policy. See Weissman, 938 P.2d at 553 (“The General Assembly is the branch of government charged with creating public policies, and the courts may only recognize and enforce such policies.”). Other than directing us to Kearl — which addressed the public policy of granting relief to a whistleblower whose employment was terminated for exposing his employer’s attempts to defraud the government, and not for exercising a “job-related right,” 205 P.3d at 499 — the parties do not cite to a single case in which the courts 
19 recognized a cognizable claim for wrongful discharge based on an employee’s termination for exercising a “job-related right.” ¶ 39 Our research has uncovered only three employment termination cases holding that the employer had violated a “job-
related right.” See Bonidy v. Vail Valley Ctr. for Aesthetic Dentistry, P.C., 186 P.3d 80, 84-85 (Colo. App. 2008) (holding that the Department of Labor and Employment’s wage order “constituted a clearly expressed public policy” concerning the dental employee’s right to take a lunch break); Herrera v. San Luis Cent. R.R. Co., 997 P.2d 1238, 1240 (Colo. App. 1999) (holding that because the Federal Employers’ Liability Act provided the employee the “right to seek compensation for his work-related injury,” it constituted “a recognized public policy exception to the at-will employment doctrine”); Hoyt v. Target Stores, 981 P.2d 188, 192 (Colo. App. 1998) (holding that “the Colorado Wage Claim Act clearly establishes as public policy that employees are entitled to be paid for the time they work”). Indeed, the supreme court rejected a wrongful discharge claim based on a statutory right that did not truly impact the public. See Weissman, 938 P.2d at 553 (holding that the Department of Labor and Employment’s wage order “d[id] 
20 not rise to the level of a public-policy mandate susceptible to private enforcement” concerning a clerical typist’s right to take rest breaks). ¶ 40 These cases demonstrate that a court will only recognize a “job-related right” as an expression of public policy if such right is clearly expressed in a statute or an administrative regulation. ¶ 41 We can discern no direct or indirect reference to a “job-related right” in Castillo’s complaint. Neither the district court nor the parties cite to any legal authority granting Castillo the right to report her compliance and ethical concerns to Denver Health. And Castillo did not enjoy such a right simply because she was a registered nurse. See Jaynes v. Centura Health Corp., 148 P.3d 241, 244-45 (Colo. App. 2006) (holding that neither the American Nurses Association’s policies nor the American Association of Critical-Care Nurses’ policies serve as expressions of public policy); Lampe v. Presbyterian Med. Ctr., 41 Colo. App. 465, 468, 590 P.2d 513, 515 (1978) (holding that the Colorado statute defining and regulating the nursing profession does not confer on nurses a “specifically enacted right” to raise concerns about staffing levels at a hospital). 
21 ¶ 42 Thus, we conclude that the district court erred by holding that Castillo could have brought a claim for wrongful discharge in violation of public policy premised on her exercise of a “job-related right.” 2. Castillo Did Not Have an “Important Public Duty” to Report Her Concerns ¶ 43 We now turn to whether Castillo had an “important public duty” to report her compliance and ethical concerns. See Lorenz, 823 P.2d at 107 (“Claims for wrongful discharge under the public-
policy exception have included termination of employees for . . . the employee’s refusal to forsake the performance of an important public duty or obligation . . . .”) (emphasis added). ¶ 44 Denver Health contends that Castillo had a duty to report such concerns and that her duty was “triggered by statutory requirements and other legal and ethical obligations” binding on Castillo in her capacity as Denver Health’s Senior RN Clinical Risk Manager. Thus, according to Denver Health, Castillo’s “duty to report is not limited to [its] policies.” However, again, the parties fail to direct us to any specific authority — other than Denver Health’s policies — imputing such a duty to Castillo. 
22 ¶ 45 Denver Health points to the following allegation in Castillo’s complaint: [Denver Health] is required to timely report all sentinel events to the . . . CDPHE and The Joint Commission, and is thereafter required to conduct a “root cause analysis” to determine why the sentinel event occurred. [Denver Health] is also statutorily mandated to report deaths, including all fetal deaths that occur in [its] OB/GYN Department, to CDPHE. Assuming that Castillo’s statement is accurate, Denver Health, and not Castillo, had a duty to report sentinel events to the external authorities. Nothing in the statement required Castillo to personally report anything — internally at Denver Health or externally. Denver Health does not argue that Castillo had specific reporting duties beyond those enumerated in its policies. ¶ 46 It is also unclear from the parties’ arguments when Castillo’s (or Denver Health’s) alleged duty to report was triggered. Denver Health does not dispute Castillo’s assertion that it terminated her employment for raising concerns regarding a “yet uncompleted internal risk management investigation.” Thus, even though Castillo had a duty to report her concerns to Denver Health, we 
23 cannot discern whether that duty was triggered before Denver Health terminated her employment. ¶ 47 For these reasons, we conclude that Castillo did not have an “important public duty or obligation” to report her ethical and compliance concerns. See Lorenz, 823 P.2d at 107. Any such duty emanated solely from Denver Health’s internal policies. This type of duty cannot support a claim for wrongful discharge in violation of public policy. See Mariani, 916 P.2d at 525 (holding that the “public policy must be clearly mandated”). 3. Castillo Did Not Engage in a Whistleblowing Activity When She Reported Her Compliance Concerns ¶ 48 Although the district court held that Castillo exercised a “job-
related right” by voicing her ethical and compliance concerns, it predominately based its reasoning on Kearl, which, as noted above, addressed an employee’s termination for whistleblowing. 205 P.3d at 499. Thus, we consider whether Castillo pleaded facts supporting a claim for wrongful discharge in violation of public policy due to “‘whistleblowing’ activity or other conduct exposing [Denver Health’s] wrongdoing.” Lorenz, 823 P.2d at 107. 
24 ¶ 49 We conclude that Castillo did not engage in “whistleblowing activity” by reporting her compliance concerns to Denver Health for two reasons. ¶ 50 First, Castillo did not plead that Denver Health had violated SEPA, which protects state employees from retaliatory discharge for whistleblowing. See § 24-50.5-103(1), C.R.S. 2021 (“[A]n appointing authority or supervisor shall not initiate or administer any disciplinary action against [a State of Colorado] employee on account of the employee’s disclosure of information.”). Although Castillo allegedly observed the director of Denver Health’s OB/GYN department “minimize the . . . sentinel event” by “refus[ing] to acknowledge that the sentinel event had occurred because there had been a significant deviation from the [s]tandard of [c]are involving failure to properly monitor vital signs of the fetus,” she did not allege that Denver Health had violated the law. Rather, Castillo voiced concerns regarding her perception of the director’s attitude toward the sentinel event. She did not allege that the director had covered up the sentinel event or that he would cover up a similar event in the future. And she did not allege that Denver Health was complicit in the director’s alleged mishandling of the situation. 
25 ¶ 51 Moreover, Castillo’s subjective belief that “there had been a significant deviation from the [s]tandard of [c]are,” without more, is insufficient to form the basis of a claim for wrongful discharge in violation of public policy. See Goodman v. Wesley Med. Ctr., L.L.C., 78 P.3d 817, 822-23 (Kan. 2003) (“It would be both troublesome and unsettling to the state of the law if we were to allow a retaliatory discharge claim to be based on a personal opinion of wrongdoing.”). As noted above, the public policy “must be clearly mandated such that the acceptable behavior is concrete and discernible as opposed to a broad hortatory statement of policy that gives little direction as to the bounds of proper behavior.” Mariani, 916 P.2d at 525. ¶ 52 Other than her general reference to a failure to monitor fetal vital signs properly, Castillo did not plead how Denver Health failed to conform to an applicable standard of care. Significantly, Castillo did not point to a particular standard of care, such as an ethical rule applicable to physicians, nurses, hospitals, or public health agencies, that she believed Denver Health had violated. See Goodman, 78 P.3d at 823 (“Because the [Kansas Nurse Practice Act] does not provide definite or specific rules, regulations, or laws, it 
26 cannot be the basis for a retaliatory discharge claim.”). The mere existence of a sentinel event does not establish a violation of some unspecified standard of care. ¶ 53 Second, for purposes of SEPA, Castillo did not “disclos[e] . . . information” about Denver Health’s alleged violation of the standard of care. § 24-50.5-103. Although Castillo discussed her ethical and compliance concerns with Denver Health’s general counsel and chief quality officer, her actions did not amount to a “disclosure of information” — she did not plead that Denver Health had violated the public interest. See Ferrel v. Colo. Dep’t of Corr., 179 P.3d 178, 186 (Colo. App. 2007) (“[A]lthough the statutory definition for disclosure does not use the phrase ‘public concern,’ § 24-50.5-101[, C.R.S. 2021,] clearly contemplates that such disclosures must relate to information about agency conduct contrary to the ‘public interest.’”); § 24-50.5-102(2), C.R.S. 2021 (defining “[d]isclosure of information”). ¶ 54 Thus, under the facts Castillo pleaded, we conclude that she could not have brought a claim for wrongful discharge in violation of public policy for whistleblowing. 
27 ¶ 55 In sum, the district court erred by dismissing Castillo’s claims. Castillo did not plead facts supporting a “clearly expressed public policy.” Mariani, 916 P.2d at 524. And without a clear expression of public policy supporting her claims, Castillo could not have established the second element of an action for wrongful discharge in violation of public policy — “that the action directed by the employer would violate a specific statute relating to the public health, safety, or welfare, or would undermine a clearly expressed public policy relating to the employee’s basic responsibility as a citizen or the employee’s right or privilege as a worker.” Lorenz, 823 P.2d at 109. F. Appellate Attorney Fees ¶ 56 Because the district court erred by dismissing Castillo’s claims, we hold that Castillo’s appeal is not frivolous. Thus, we decline to award appellate attorney fees to Denver Health. See Calvert v. Mayberry, 2019 CO 23, ¶ 42, 440 P.3d 424, 434 (“Colorado law provides that a court shall assess attorney[] fees against a party if the party brought an action that lacked substantial justification or was for the purpose of delay or harassment.”); C.A.R. 38(b) (providing that an appellate court may 
28 award attorney fees when an appeal is frivolous); see also Ferrel, 179 P.2d at 189 (holding that a party that successfully defends a dismissal order under the Act for lack of subject matter jurisdiction is entitled to recover reasonable attorney fees on appeal). III. Conclusion ¶ 57 The district court’s judgment is reversed, and the case is remanded for further proceedings. JUDGE FOX and JUDGE FREYRE concur.